[Crim. No. 586. Fifth Dist. Oct. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JACK WESLEY MITCHELL, Defendant and Appellant.

**COUNSEL**

William M. Young, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—Jack Wesley Mitchell and Hance Buddy Watkins were convicted of burglary in violation of section 459 of the Penal Code. Mitchell appeals from the judgment entered on the jury's verdict. His main contention for reversal, and the only contention which has substance, is that he was deprived of effective aid by counsel because he and Watkins were tried at the same time and represented by the same deputy public defender.

· The facts are these: on September 2, 1967, at 2:39 a.m., Officer W. R. Nix of the Coalinga Police Department was cruising in his patrol car when he received a call from the radio dispatcher that a burglar alarm at the Coalinga Lumber Company yard had been triggered. The officer proceeded directly to the lumberyard and arrived there in approximately 35 seconds. He then left the patrol car and walked to the rear of the lumberyard office building where he heard noises that sounded like footsteps coming from inside the building. A few minutes later Nix observed appellant and his co-defendant Watkins coming out of the rear door of the office building; appellant came out first with Watkins directly behind. Appellant had gloves on both hands and was holding a screwdriver. Watkins had a handkerchief in his hands. The officer ordered the two men to halt and took them into custody. Afterward, it was discovered that the rear door of the office building had been forced open, and a bar was found lying on the floor in front of the safe. According to the owner of the lumber company, neither the bar nor the screwdriver taken from the appellant came from the premises.

Appellant elected not to testify at the trial. However, Watkins testified that he and appellant, together with their families, were passing through Coalinga in separate automobiles at approximately 2 a.m. on the morning of September 2, 1967, enroute to Watsonville. He related that appellant's wife stopped the car in which she and appellant had been riding, and appellant, who had been drinking heavily and was intoxicated, got out and staggered across the street into the yard of the Coalinga Lumber Company. Watkins said he followed, and as he and appellant rounded a corner of the office building they were accosted by Officer Nix and placed under arrest. He said that they had not entered the building or gone up the stairs and that he had never seen the gloves, screwdriver or the bar before.

It is of course true, as respondent maintains, that codefendants are not entitled to separate representation by counsel as a matter of right; the right of codefendants to separate representation is not automatic, and the

fact that a single attorney was appointed to represent appellant and his brother-in-law, of itself, does not mean that appellant was deprived of his right to effective representation (*Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]). However, the right to separate counsel "has received expanding protection in the continuing process of refinement of the elements essential to the attainment of a fair trial." (*People* v. *Douglas,* 61 Cal.2d 430, 437 [38 Cal.Rptr. 884, 392 P.2d 964].) Thus, in *People* v. *Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106], the California Supreme Court recently declared that "[i]f counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel." Moreover, in that landmark decision the court disapproved earlier holdings that the right to separate counsel was waived unless the motion was made in the trial court in a timely fashion. The court had this to say: "If defendants were denied the right to effective representation of counsel, we cannot presume that the right was waived by a failure to request separate counsel. The court did not advise them of their right to separate counsel if a conflict was present, and we cannot imply from their silence a waiver of that right."

██ In short, if codefendants are not informed of their right to separate counsel in the event of a potential conflict of interest between them, and if the record later indicates that there was an actual conflict of interest, the question of ineffective representation by counsel may be raised for the first time on appeal. And, significantly, the appellate court may use hindsight to ascertain whether or not there was an actual conflict of interest and, if so, whether appellant was injured (*People* v. *George,* 259 Cal. App.2d 424, 432 [66 Cal.Rptr. 442]).[1]

██ Applying hindsight to the facts of this case, we conclude that there was a conflict between the interest of appellant and his codefendant Watkins and that appellant was injured by the dual representation. Counsel informed the court immediately prior to commencement of the trial that Watkins, who had a deplorable criminal record, insisted on taking the stand in his own behalf, while appellant declined to do so. Then Watkins, on cross-examination by the prosecutor, admitted at least one felony conviction in the State of Oklahoma, at least seven burglary convictions in Bakersfield, California, and that he had pleaded guilty to 21 separate counts of burglary in the State of Texas. Manifestly, after the jury learned that Watkins had 29 felony convictions, most of them for burglary, it is unlikely that they gave him the benefit of any reasonable doubt which may have been produced by the evidence. On the contrary, in view of his incredible

---

[1]The case of *People* v. *George,* 259 Cal.App.2d 424 [66 Cal.Rptr. 442], in which the "hindsight" rationale was applied, was cited with approval by the Supreme Court in *People* v. *Chacon, supra,* 69 Cal.2d 765, 774.

criminal propensity to commit burglary, it is more than likely that the jury would have found Watkins guilty of the burglary charged regardless of any mitigating evidence in his favor and despite the standard jury instruction that evidence of prior convictions is to be considered solely for impeachment purposes. By the same token, it is also more than likely that the jury would have found appellant guilty if for no other reason than by association. Appellant was not only apprehended with Watkins in the lumberyard, but Watkins testified that he was appellant's brother-in-law, and that they were reared in the same neighborhood

Arguably, Watkins' criminal record would have been disclosed to the jury despite the dual representation, since possibly he would have elected to testify even if he and appellant had been represented by separate counsel. However, the finding of guilt merely on the basis of past criminality is abhorrent to the American judicial system. The finding of guilt by association is equally abhorrent (*People* v. *Chambers,* 231 Cal.App.2d 23 [41 Cal.Rptr. 551]). Thus, it has been consistently stated that a potential conflict of interest exists when one defendant has a record of prior felony convictions and the other does not (*People* v. *Douglas, supra,* 61 Cal.2d 430; *People* v. *Baker,* 268 Cal.App.2d 254 [73 Cal.Rptr. 758]; *People* v. *Odom,* 236 Cal.App.2d 876 [46 Cal.Rptr. 453]). An even stronger argument as to the danger of a jury finding an innocent defendant guilty by association could be made in a burglary prosecution where, as here, both codefendants have a past history of burglary convictions and only one insists on testifying on his own behalf. It is therefore conceivable that if independent counsel had been appointed for appellant, he would have concentrated on appellant's rights and would have moved for a separate trial once he learned that Watkins, with his abominable criminal record, insisted on testifying on his own behalf. Moreover, even if unsuccessful in his effort, counsel would not have been hampered during the trial and in his final summation to the jury by conflicting loyalties to the two defendants. For example, it must have been extremely difficult, if not impossible, for the same attorney to explain why one of his clients elected to testify and the other did not. In addition, it is conceivable that independent counsel for appellant, unhampered by any duty or loyalty to the codefendant, could have convinced the jury that the burglary was actually committed by the professional burglar, Watkins, and that appellant, extremely drunk, initially staggered into the lumberyard by accident and then followed his brother-in-law into the building without ever formulating the specific intent to steal or commit any other felony.

This case is further complicated by the dilemma in which the trial judge found himself when appellant's trial counsel refused to call the witness

Tatum, even though appellant insisted that he should do so. Counsel informed the court that Tatum was willing to testify that he, not appellant and Watkins, committed the burglary in question; however, he had previously told Watkins' former attorney, Mr. Kubota, that his proposed testimony was not true and that he knew nothing about the burglary. Counsel stated that he would not call Tatum for two reasons: first, because as an officer of the court he could not in good faith call the witness, knowing that there was a great possibility that the witness would offer perjured testimony; and, second, he would not call Tatum as a matter of trial strategy because of the highly damaging nature of the impeaching testimony that Kubota could give if called as a witness. Then, the trial judge attempted to resolve the dilemma by permitting either defendant to call Tatum on his own initiative. However, the witness was not called by either defendant, and the record is silent as to the reason.[2] Thus, by his reluctance to use the witness Tatum unless called by one of the defendants, counsel left the decision as to whether it was strategically advisable to call the witness to untrained individuals, and hence may have created a conflict between them which they resolved without independent legal advice.

It is true that in this case the evidence amply supports the jury's verdict. Be this as it may, appellant's failure to secure adequate representation by counsel was "of federal constitutional dimensions," and we do not believe that it was "harmless beyond a reasonable doubt." (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) But, of even greater importance, the American judicial system is founded on the salutary proposition that any person accused of crime shall have a fair trial before an imparital tribunal regardless of the quantum of proof against him. We simply cannot hold that appellant had a fair trial by an impartial jury under the circumstances we have described.

The judgment is reversed.

Stone, P. J., concurred.

A petition for a rehearing was denied November 19, 1969, and respondent's petition for a hearing by the Supreme Court was denied December 17, 1969. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

[2]The record merely indicates that Tatum was warned in the judge's chambers by the prosecutor that if he testified that he committed the burglary for which appellant stood charged, he would either be prosecuted for the burglary or charged with perjury. Yet, notwithstanding this warning, the witness stated that he was willing to so testify.