[Crim. No. 16684. First Dist., Div. Three. Sept. 26, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH EDWARD YOUNG et al., Defendants and Appellants.

596

**COUNSEL**

Frank Offen and Ira S. Blatt, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—On November 3, 1976, in the City of Seaside, Dennis Volk was robbed at gunpoint while clerking at Mal's Market. By information in count one, appellants Kenneth Edward Young, Gregory

Ray Pickens and one Brainard Dennis Canty were jointly charged with the robbery of Mr. Volk.

On November 7, 1976, Delmar Bear was robbed at gunpoint while he was clerking at Broadway Liquors, also located in the City of Seaside. Count two of the aforestated information charged appellant Pickens, along with Canty, with the robbery of Mr. Bear. Both robberies were the daylight variety; and in each count Mr. Canty was designated as the gunman by appropriate "use" clauses. (Pen. Code, §§ 12022.5 and 1203.06.)

Five or six hours after Mr. Volk was robbed, appellant Young was arrested in nearby Sand City Beach. At the beach, he was arrested as he conversed with a female companion while occupying the driver's seat of a "black and white" automobile. While the vehicle only generally matched the eyewitness description furnished the police, it did bear the identical license number of the sought after "getaway car." No incriminating evidence was found on the person of Mr. Young.

However, the black and white automobile was impounded and stored by the police as evidence. The day following the arrest the police in the course of scientific criminal investigation (dusting for prints) lifted the latent fingerprints of Mr. Pickens (outside) and Mr. Canty (inside).

Appellants' pretrial motion to suppress pursuant to Penal Code section 1538.5 was denied; the fingerprints were received in evidence. Appellants herein complain reversible error: "unreasonable search and seizure." Reasoning erroneously that dusting for fingerprints was a warrantless search, they urge this court to view the lifting of the latents as an illegal seizure. However, we will briefly explain that there was neither search nor seizure in the constitutional sense. Appellants' contention fails to appreciate that the "getaway car" was itself evidence.

When jury selection commenced in Judge Harkjoon Paik's courtroom, there were not two but three defendants. During the noon recess of the second day of the prosecution's proof, codefendant Brainard Canty effectively removed himself from the courtroom and the jury's consideration by pleading "guilty as charged" to both counts of robbery. Over the remonstrations and objections of defense counsel, the trial judge greeted the jurors on their return with what is best described as a full disclosure

statement.[1] We shall explain that in our view this was error but not reversible error.

Mr. Canty made oral and written statements to the police. Mr. Young filed a pretrial motion to sever his cause from Mr. Canty's trial. The trial court denied the motion, edited the statement, and ruled the statements admissible. We shall reject Mr. Young's contention that this was error.

Neither Mr. Young nor Mr. Pickens testified. The prosecution requested jury instructions CALJIC No. 2.60 (rev. 1973) and CALJIC No. 2.61 (rev. 1971) concerning defendants' right to decline to testify, which the court gave. We find that this was not error. Even if we were to find error, we are convinced the error would not necessitate reversal.

Mr. Young and Mr. Pickens were convicted of first degree robbery as charged. We will affirm the judgments.

Dennis Volk was the only grocery clerk in Mal's Market in Seaside at about 8:15 a.m. on November 3, 1976, when appellant Kenneth Young walked in and asked if the store still bought silver coins. Volk remembered that Young had sold him some coins about a week earlier and Volk told him that he would buy them. Young sold Volk between $6 and $7 worth of coins at twice the face value. Young then left and Volk went back to his work filling the candy shelves.

Two or three minutes later appellant Gregory Pickens, who was wearing a diamond earring, walked up to Volk and asked him if he sold Champale. Volk answered that he did not and Pickens left. Within a minute or two Brainard Canty appeared. Canty pointed a handgun at Volk and forced him to fill up a brown paper bag with money from the

---

[1]After the jury returned, the court made the following statement: "Ladies and gentlemen, there was a brief delay over the noon hour. I would like to inform you that Mr. Canty is no longer a party to this lawsuit. A few minutes ago Mr. Canty changed his plea, and he is no longer in this case. However, the fact that Mr. Canty pled should not be considered by you as evidence of guilt as to any of the remaining defendants in this case. Each one of you promised at the beginning of this trial that you will consider each defendant separately and distinctively. I would like to admonish each one of you to please remember that promise because you must now consider only the evidence produced as to both Mr. Young and Mr. Pickens only and ignore all evidence as to Mr. Canty. [¶] In other words, the evidence that has been introduced as to Mr. Canty should not be considered necessarily irrelevant to convict either one of the defendants, or you should not view this case in a way that just because Mr. Canty entered a plea of guilty you would conclude that the remaining defendants are guilty. You are not permitted to do so. The reason, of course, in informing you of Mr. Canty's change of plea is because the Court felt that you should have an absolute right to know what is going on in the courtroom."

cash register. Volk put about $50 in the bag, and after Canty left, Volk called the police.

At about 8:15 that morning Patricia Alexander, who lived near Mal's Market, looked out her window and noticed appellant Young sitting in a large white car with a black top. The car was parked on the wrong side of the street and was moving backward and forward. Another woman, Silvia Caffall, was on her way to Mal's when she saw two men, one holding a gun, dash across the street and jump into a white car with black stripes and a black top. One got into the back and the other into the passenger side of the front and the car immediately took off. She jotted down the license number and took it in to Volk, who passed it on to the police.

Four days later, on November 7, 1976, Delmar Bear was working at Broadway Liquors in Seaside at about 4:40 p.m. when Pickens and Canty entered together. Pickens asked for Champale. When Bear came back from the cooler with a four-pack, Canty had an automatic pistol trained on him and said, "Get over here and give us all your money." Appellant Pickens had a knife tucked into his belt. Pickens took a paper bag and stuffed $50 or $60 into it. They forced Bear into the bathroom at the back of the store and demanded more money. They tied his hands with a piece of wire, took his car keys, and asked where his car was. Canty held the pistol to Bear's head and asked "Shall we kill him?" Pickens answered "No" and they left. Bear loosed his restraints and called the police within a minute after they left.

A gas station attendant saw the two emerge from Broadway Liquors, and a neighbor saw them run down the street and try to hide behind some bushes in a vacant lot. A police car arrived almost at once, and the officer chased the two over an eight-foot fence and through several backyards before capturing them. The neighbor found a sack of money where they had been hiding in the vacant lot.

■ Appellants contend that the fingerprints of Canty and Pickens were improperly admitted into evidence. Their argument is premised on the misconception that when the police acquired the fingerprints there was a *search* requiring a warrant issued upon probable cause. Their premise is false. We are not concerned here with a search incident to lawful arrest, *exigent circumstances* or even *inventory search.*

The principle that governs is stated in *People* v. *Teale* (1969) 70 Cal.2d 497, 511 [75 Cal.Rptr. 172, 450 P.2d 564], cited with approval in *North* v.

*Superior Court* (1972) 8 Cal.3d 301, 305-308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]. Justice Sullivan states: "When officers, incidental to a lawful arrest, seize an automobile or other object in the reasonable belief that such object *is itself evidence* [fn. omitted] of the commission of the crime for which such arrest is made, any subsequent examination of said object undertaken for the purpose of determining its evidentiary value does not constitute a 'search' within the meaning of the Fourth Amendment. . . ." The *Teale* principle arose in the context of the automobile being used to transport the victim. However, it is not factually limited but applies with equal force to the "getaway" vehicle. (See *People v. Moore* (1975) 51 Cal.App.3d 610 [124 Cal.Rptr. 290] and *People v. Lundy* (1969) 2 Cal.App.3d 939, 947 [82 Cal.Rptr. 815].)

Indeed, the vehicle need not be a "getaway" car. The rule in *Teale* was reaffirmed, followed and extended to include a crucial incriminating letter seized from a suspect van without the requirement of a search warrant by Justice Clark, speaking for a unanimous Supreme Court. (See *People v. Rogers* (1978) 21 Cal.3d 542 [146 Cal.Rptr. 732, 579 P.2d 1048].)[2]

Herein, there is no contention that appellant Young's arrest was anything but lawful. Seizing the black and white automobile as evidence incident to the arrest was certainly reasonable in light of the fact that the license number matched identically that reported by the eyewitness Silvia Caffall. It was reasonable to hold the automobile as evidence. No unwarranted or unconstitutional invasion of privacy was involved. It is to be expected of modern law enforcement that as an object of evidence, the vehicle would be scientifically examined, and the results made available to all parties. The trial court properly denied appellants' Penal Code section 1538.5 motion to suppress the fingerprint evidence.

■ Error was committed when the trial court informed the jury that Canty had pled guilty. In our view, to hold otherwise would be intellectually dishonest. Canty's plea of guilty made him a nonparty. However, whether Canty was the gunman was a remaining question of fact to be decided by the jury in determining the guilt of each appellant. Where, as here, the trial is of multiple defendants and counts, the jury must decide separately whether each of the defendants is guilty or not

---

[2] In *Rogers*, the Supreme Court, notwithstanding the fact that they could have reached the same result by limiting their reasoning to a consent search, utilized *Teale* and reasoned that since the New Jersey police reasonably believed that the van itself was evidence of the crime the defendant had committed in Lakewood Township, New Jersey, no warrant was required to seize a letter from the impounded van. The letter formed the basis for the criminal prosecution in California.

guilty. The record reveals that the trial judge opted to disclose the fact of the plea to the jury because he did not want the jury to speculate as to the reason for Canty's sudden disappearance from the courtroom. Clearly, the fact of Canty's absence, as well as the reason, was irrelevant to the jury's determination of guilt or innocence in appellant's causes.

By revealing over defense objections that Canty, a nonparty, had admitted his complicity, the jury received what is tantamount to inadmissible hearsay evidence that Canty in fact participated in the robberies as the gunman. It is for this precise reason that we conclude that the trial court erred.

Respondent concedes that Canty's plea was inadmissible as irrelevant, but argues that it was not presented by sworn evidence and that a strong admonition advised the jury that the plea was in fact irrelevant to their deliberations. If in fact Canty's guilt forged an important link in the prosecution's chain of evidence, the fact that the jury was informed of it by the judge rather than by a sworn witness and the fact that the jury was admonished to disregard the fact could hardly negate the prejudice caused by the court's assistance to the prosecution. Error could hardly be negated by the form in which the inadmissible matter reached the jury or cured by an admonition to disregard evidence prejudicial to the defense case. (Cf. *People* v. *Aranda* (1965) 63 Cal.2d 518, 529 [47 Cal.Rptr. 353, 407 P.2d 265].)

Had the trial court accepted Young's counsel's suggestion that the jury be informed only that Canty's case had been disposed of and that the jury should not concern itself with Canty, explaining that it should not speculate upon the legal reasons for Canty's removal from the case, the jury would have been adequately advised of the circumstances with no harm to the defense. Thus, the court's rejection of that suggestion in favor of giving irrelevant information to the jury must be termed error. The critical question, however, is whether the error was prejudicial.

■ Tested by even the more stringent test of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], the error was clearly harmless beyond a reasonable doubt as to the second robbery (Bear). As to that robbery, not only was Canty identified as the gunman, but a chain of witnesses traced his path from the crime scene to his capture, with evidence of the crime strewn along the getaway path. His admission of guilt to that could have had little effect upon the

jury's conviction of Pickens, who was also apprehended during the getaway and identified by the victim.

As to the first robbery (Volk), the conclusion is not so obvious. The evidence connecting Canty to the robbery included the victim's eyewitness testimony, the discovery of his fingerprints in the getaway car, and the similarity in modus operandi with the second crime (asking for Champale). Young was connected to the first robbery by his presence in the getaway car later that day and by the fact that he was in the store just before the robbery, added to the evidence that the witness Alexander identified Young as the person waiting in the vehicle that immediately thereafter was identified by the witness Caffall as the getaway car. Pickens was connected to the first robbery by his presence in the store utilizing the Champale modus operandi and his fingerprint inside the getaway car.

■ As to the first robbery conviction (Volk), we find no reversible error under *Chapman*. We hold that beyond a reasonable doubt the jury would have convicted appellants even without knowledge that Canty entered a guilty plea. The eyewitness testimony that appellants were in Mal's Market within five minutes before Canty's use of the gun was uncontradicted. Eyewitness testimony that Young drove the getaway car was not substantially impeached. The fingerprint evidence was not contradicted and when viewed in conjunction with the reasonable inferences from the eyewitness testimony places Pickens in the getaway vehicle. Appellants were convicted as aiders and abettors of Canty, Young as the "driver" and Pickens as the "lookout." When the jury was told that Canty had admitted that he in fact pulled the armed robbery, they were not told anything but that which the uncontradicted evidence revealed. Knowledge of Canty's guilty plea did not add to the existing evidence concerning the extent of appellants' knowledge and complicity in Canty's act of robbery. Thus, beyond a reasonable doubt conviction would have occurred even had the jury not been informed of the Canty plea of guilty. The error was harmless.[3]

---

[3]In their briefs urging prejudicial error requiring reversal, appellants made the following contentions that we conclude, after lengthy consideration, have no merit.

First, appellant Young cites *People* v. *Mitchell* (1969) 1 Cal.App.3d 35 [81 Cal.Rptr. 478] and *People* v. *Chambers* (1964) 231 Cal.App.2d 23 [41 Cal.Rptr. 551], as requiring reversal because informing the jury of Canty's guilty plea resulted in conviction by "guilt by association." Assuming appellants' good faith, and without invading the jury's province of judging the credibility of witnesses and fact finding, we have applied hindsight to the record evidence of facts to determine if the conviction of appellants was obtained under conditions that deprived them of a fair trial as required by the *Mitchell* case. We find that the trial judge's "full disclosure" statement did not create a courtroom atmosphere that resulted in a denial of due process, i.e., "guilt by association" at the trial

Devoid of any merit is appellant Young's assertion that in disclosing Canty's guilty plea the trial judge engaged in prejudicial misconduct mandating a conclusive presumption of prejudicial error. Counsel for appellant Young's reliance upon *People* v. *Frank* (1925) 71 Cal.App. 575 [236 P. 189] is misplaced. Our reading of the entire record prompts us to declare that when the trial judge informed the jury of Canty's guilty plea, we cannot detect in the slightest any desire, motive or intention to prejudice Young in the eyes of the jury. The record is clear that the judge mistakenly felt that the jury should "have an absolute right to know what is going on in the courtroom."

Earlier we alluded to the fact that Canty made oral and written statements to the police. Canty's confession implicated appellant Young by name as the person who cased Mal's Market, advising that since there was only one clerk in the store it would be "an easy place to hit." Further, Canty identified Young as the driver of the black and white getaway car; and that he, Pickens and Young were "looking for a place to rob." Properly, appellants moved for separate trials. The trial court denied the motions, ruling that Canty's confessions as edited, deleting all reference to appellants, would be admissible in evidence against Canty only. The trial court thereupon ordered a joint trial. We footnote Canty's edited

---

with Mr. Canty. We would reverse the convictions without hesitation, if we thought otherwise for it is clearly written that "guilt by association" is thoroughly discredited in American jurisprudence. Appellants' cases are clearly different from *Chambers* and *Mitchell*. *Chambers* was a case of a series of particularly disgusting assaults on elderly nursing home patients. Defendant secured a reversal because the appellate court concluded his conviction was obtained because of evidence of association (husband and wife) with a codefendant (wife) who was separately charged with equally disgusting assaults on the same patient. Additionally, it was held that the trial court's instruction did not specify which evidence was limited to which defendant. In *Mitchell,* one attorney represented two defendant brothers-in-law on a charge of burglary. Appellant won a reversal because his codefendant was impeached by 29 felony convictions, most of them burglaries. Thus, the concern of the *Chambers* and *Mitchell* courts was that admission of association together with evidence that the codefendant was a bad person and probably guilty, had caused conviction of the appealing defendants.

As we have heretofore pointed out, and will elsewhere have occasion to reiterate, appellants' association with Canty was clearly shown by eyewitness and fingerprint evidence. Evidence introduced against Canty was properly admissible and relevant to the prosecution cases against appellants. Young and Pickens were convicted because the evidence proved that Canty was the gunman and that with knowledge of Canty's unlawful purpose, Pickens acted as a lookout and Young as the driver of the getaway car.

Secondly, appellants argue reversible error relying upon *People* v. *Aranda, supra,* 63 Cal.2d 518. This reliance is misplaced even though they only argue by analogy that Canty's guilty plea was like a confession introduced in a joint trial implicating codefendants as well as the confessing defendant. There was no violation of *Aranda.* Canty's plea of guilty did no more than tell the jury, when revealed by the trial court, "I robbed the stores." Young and Pickens were not thereby implicated. (See *People* v. *Epps* (1973) 34 Cal.App.3d 146, 157 [109 Cal.Rptr. 733].)

statement[4] which originally clearly incriminated appellant Young. Canty did not testify in the case and the statements were never offered into evidence.

■ Appellant Young asserts that denial of the motion for severance was reversible error. He urges that the holding of *People* v. *Aranda, supra,* 63 Cal.2d 518, supports his assertion. In *People* v. *Aranda,* the Supreme Court of this state, cognizant of the constitutional right of confrontation, laid down a procedural rule for the trial court as follows: "When the prosecution proposes to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court must adopt one of the following procedures: (1) It can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established. (2) It can grant a severance of trials if the prosecution insists that it must use the extrajudicial statements and it appears that effective deletions cannot be made. (3) If the prosecution has successfully resisted a motion for severance and thereafter offers an extrajudicial statement implicating a codefendant, the trial court must exclude it if effective deletions are not possible." (At pp. 530-531.)

[4]The edited statements of codefendant Canty are: "I. ORAL STATEMENT OF DEFENDANT CANTY ON NOVEMBER 8, 1976 TO OFFICER JAMES.

"He advised me that he drove up from L A on November 2, 1976 in the previous listed suspect vehicle, a black over white '68 Buick Riviera. He stated that he left L A at approximately 1:30 pm on Tuesday November 2, 1976. On arrival in Seaside he stayed with a subject known as Patricia on Noche Buena. He stated that November 3, 1976 he got in the vehicle and was looking for a place to rob. Canty stated that he went to Mal's Market. The vehicle was parked in the parking lot. Canty stated that the vehicle was then parked in an alley referring to Kenneth and Wanda. Canty then entered the store and went to the back soda area. Canty walked around the counter between the clerk area and front door apparently was unnoticed by the clerk. He stated he pulled the automatic hand gun from his pocket and cocked it ejecting a live round on the floor which he observed. He stated that he then approached the clerk, pointed the gun at him and told him to put the money into the bag. Canty stated that he then exited the store and fled north thru the parking lot. Canty stated that he had on his feet a pair of dark brown slippers which were lost in the parking lot. Canty stated that he did not recall ejecting another shell in the parking lot. However, he did have other ammunition—5 to 6 rounds—in a shirt pocket which he apparently lost while making his escape. He stated that he then entered the vehicle and went northbound on Kenneth Avenue.

"II. WRITTEN STATEMENT OF DEFENDANT CANTY ON NOVEMBER 8, 1976 TO OFFICER JAMES.

"I drove up from L A Tuesday. The next morning I went to some store and I went in the store. I pulled the gun on the man then told him to put the money in a bag. I ran to the car. I was looking for a place to rob."

*Aranda* requires only an effective deletion of references to codefendants. Recognizing this, Young argues that the motion should have been granted since the prosecution was unable to edit Canty's extrajudicial statements to effectively delete mention of him.

Appellant Young's specific objections to the editing of the statement are that it left in the description of the car he was arrested in and it implied that someone other than Canty was driving the car during the first robbery. He argues that the statement, had it been introduced, would have tied him to the robbery, and that the trial court therefore should have granted his motion to sever.

Appellant Young is not precluded from making this argument by the fact that Canty pled guilty during trial, thus removing the threat that an improperly edited statement would be introduced. ■ "The propriety of the denial of a motion for separate trials must be tested as of the time of the submission of the motion [citation]; the question of error cannot be determined in the context of subsequent developments at the trial. [Citations.]" *(People* v. *Massie* (1967) 66 Cal.2d 899, 919 [59 Cal.Rptr. 733, 428 P.2d 869].) But, in considering whether the error, if any, was prejudicial, the court may look to developments at trial. *(Id.,* at pp. 921-923.)

Had the Canty statements been introduced at trial and Canty not testified, the test for prejudicial error would have been that of *Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711], made applicable because of the abridgment of appellant Young's right to confront codefendant Canty concerning his statements. However, because the statement was not introduced, only state rules for separate trials and hearsay statements are involved, making *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the applicable test. (See *Massie, supra,* 66 Cal.2d at pp. 923-924; *People* v. *Houston* (1970) 10 Cal.App.3d 894, 899 [89 Cal.Rptr. 351].)

■ We find no error occurred here. In *People* v. *Epps, supra,* 34 Cal.App.3d 146, 157, the court discussed the problem of a statement which, when combined with other evidence, could show involvement by a second person: "None of the cases reviewed in this opinion suggest that it is *Bruton* or *Aranda* error to admit in evidence the admission or confession of one defendant, which reflects his commission of a crime that is revealed by the physical evidence, because it might reflect on the issue of whether or not a crime was actually committed by not only the

declarant but also by another, whom evidence, other than the confession, links to the declarant's activities. In fact *Aranda* suggests the contrary. It suggests that if references to the participation of anyone else, whether directly or indirectly identified or not, are nonexistent, or are deleted, the trial may be joint, and the extrajudicial statement may be received as against the declarant (63 Cal.2d at p. 530)." (Accord, *People* v. *Romo* (1975) 47 Cal.App.3d 976, 984 [121 Cal.Rptr. 684].)

The statements here give no indication that more than one person was involved in the robberies. The language, "The vehicle *was parked* in the parking lot" (italics added) and "the vehicle *was then parked* in an alley," (italics added) contrary to appellant's suggestion, does not imply involvement of a second person. The description of the vehicle likewise does not imply involvement of a second person. The tie-in with appellant Young is made only by eyewitness evidence that three people were involved in the first robbery and by the independent fact that he was arrested in the car identified as the getaway car. It is not Canty's statements, but the independent evidence, which implicates appellant Young.

Even if we were to find error, it would not be prejudicial. For all practical purposes appellant Young did receive a severed trial, Canty having pled guilty during the prosecution case, and his statement never having been admitted. When Canty left the case, he was as available as a defense witness as he would have been in a separate trial. The evidence presented at appellant's trial was the same as would have been presented at a severed trial. Thus, it is not reasonably probable that a result more favorable to appellant Young would have occurred absent any error in the court's treatment of the motion to sever. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

██ As stated earlier, neither defendant testified. At the request of the prosecution, the trial court read to the jury the following instructions in the order they appear: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way." (CALJIC No. 2.60 (rev. 1973).)

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People

so as to support a finding against him on any such essential element." (CALJIC No. 2.61 (rev. 1971).)

Appellants in their briefs complain that during settlement of instructions they objected to the court's decision to give the instructions. Their objections do not appear of record, they explain, because the reporter was not present. ▆ Because an appellate court cannot properly consider assertions of fact in an appellate brief when the facts are not of record, we view the trial court's action as without objection by defendants. (See *People* v. *Ham* (1970) 7 Cal.App.3d 768, 777 [86 Cal.Rptr. 906].) Of course, the record does not show that they requested or "invited" the complained of instructions.

▆ Under the rule in *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], error is committed whenever the prosecutor or the court comments on the failure to testify. The Supreme Court held that instructions by the court that the defendant's silence is evidence of guilt violates the Fifth Amendment.

▆ Appellants contend that the court's instructions herein violated the *Griffin* rule and cite *People* v. *Vargas* (1973) 9 Cal.3d 470, 477 [108 Cal.Rptr. 15, 509 P.2d 959], to sustain their position. "The purpose of the *Griffin* rule is to prevent the accused's exercise of his constitutional privilege against self-incrimination from being judicially emphasized as affirmative evidence against him." (*People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418].) Appellants' reliance on *Vargas* is misplaced. *Vargas* held that the phrase "by itself" created *Griffin* error as used in CALJIC No. 2.61 as originally adopted. Further, it was held that the phrase, while objectionable, was not prejudicial as it was buried within an otherwise proper instruction. Appellants' jury did not hear the objectionable phrase "by itself" for the reason that the trial court properly charged CALJIC No. 2.61 (rev. 1971). Further, appellants' argument fails to appreciate that *Vargas* approved instruction (CALJIC No. 2.60) as correctly setting forth a defendant's constitutional right to remain silent and the further principle that no adverse inferences could be drawn from that silence. (*People* v. *Vargas, supra,* at p. 479; see *People* v. *Gaulden* (1974) 36 Cal.App.3d 942, 956-957 [111 Cal.Rptr. 803].)

Appellant Pickens cites *People* v. *Molano* (1967) 253 Cal.App.2d 841 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328], which holds that instructing in the language of CALJIC No. 2.60 over the "strenuous objection" of the defendant constituted *Griffin* error because it highlighted and emphasized

that the accused did not take the stand, which is tantamount to commenting upon the fact that the defendant did not testify.

Since *Molano* there has been considerable divergence in the decisions considering the propriety of giving such instructions. In three cases the courts declined to resolve a conflict between *Molano* and *People* v. *Brown* (1967) 253 Cal.App.2d 820 [61 Cal.Rptr. 368], over the question, concluding instead that even if there were error in giving the instruction at prosecution request, without objection, it was harmless. (See *People* v. *Mason* (1968) 259 Cal.App.2d 30 [66 Cal.Rptr. 601]; *People* v. *Hernandez* (1968) 264 Cal.App.2d 206 [70 Cal.Rptr. 885]; *People* v. *Cooper* (1970) 10 Cal.App.3d 96, 104-106 [88 Cal.Rptr. 919].) In *People* v. *Brady, supra,* 275 Cal.App.2d 984, the court concluded that it was proper to give the instruction if requested by the prosecution "with or without objection." Other cases have concluded that it is not error to fail to give the instruction *sua sponte.* (See *People* v. *Gardner* (1969) 71 Cal.2d 843, 852-854 [79 Cal.Rptr. 743, 457 P.2d 575]; *People* v. *Ham, supra,* 7 Cal.App.3d 768.)

The question of whether the instruction may be given over defense objection is the most difficult of those considered by the above cited authority. None conclusively resolved the question, since in *Brady* there was no defense objection and its "holding" on that point was mere dictum. Less difficult is the question presented here, where the record does not reveal a defense objection. In *Gardner,* the Supreme Court, while discussing whether the trial court had a *sua sponte* duty to instruct on the defendant's silence, noted "that the instruction contains many of the vices condemned in *Griffin* v. *California, supra,* 380 U.S. 609, including the evil of pointing up to the jury the defendant's failure to testify." However, it further observed that "the instruction also seeks to prevent the evil condemned by *Griffin* in that it expressly forbids the jury from drawing an inference of guilt from the defendant's failure to testify." The court concluded that whether the instruction was or was not to the defendant's advantage was debatable. (71 Cal.2d at pp. 853-854.)

In light of the fact that the question of whether the instruction is to the defendant's advantage is "debatable," we do not find error in the giving of such an instruction either *sua sponte* or on prosecution request if there is no defense objection. Presumably, if the defendant perceives a danger in the instruction, he will object. If he declines to object any prejudice is speculative since it is possible that the instruction actually worked to the defendant's advantage.

In accordance with the foregoing, we hold there was no error in the trial court's instructing in the language of CALJIC Nos. 2.60 and 2.61. Even if there were error because of or without objection by defendants, error was nonprejudicial in light of the strength of the prosecution case and the debatability of the question of disadvantage to the defendants from the instruction.

We affirm the judgments.

Scott, J., and Feinberg, J., concurred.