[No. A033476. First Dist., Div. Two. May 21, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LORENZO GARCIA MENDOZA, Defendant and Appellant.

COUNSEL

Renee E. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Gloria F. DeHart, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KLINE, P. J.—Lorenzo Garcia Mendoza appeals his conviction following jury trial of false imprisonment effected by violence, menace, fraud or deceit. (Pen. Code, §§ 236, 237.) He contends the introduction of police officers' testimony concerning his own extrajudicial statements was error which denied him a fair trial. Appellant further argues: (1) the trial court erroneously gave CALJIC Nos. 2.71 and 2.72 (relating to admissions by the defendant); and (2) it was error to give CALJIC Nos. 2.60 and 2.61 (concerning the defendant's right not to testify), even absent a defense objection. We shall affirm the judgment.

STATEMENT OF FACTS

At about 8 p.m. on June 27, 1985, Valerie Taylor, a 24-year-old student at Napa Valley College, was walking home alone from a play rehearsal. She noticed a navy blue pickup truck with a white shell camper traveling very slowly on her left side. She felt the driver was watching her. While she continued walking towards the campus exit, the pickup moved out of her field of vision.

Ms. Taylor saw the truck again as she continued walking along the exit road. It was unoccupied and parked halfway off the road. Ms. Taylor then heard rustling in the bushes behind the truck. She turned around and saw a male whom she assumed to be Mexican come out of the bushes and turn forward. She looked around several times, noticed that he was getting closer, took off her shoes and rolled up her script, and continued walking. She heard someone quickly walking, then running, behind her. She was hit

from behind and grabbed around her upper body. Her assailant tried to drag her to some bushes, but she struggled with him, and he suddenly released his grip. Ms. Taylor started yelling at him. Her attacker said something in a language she thought was Spanish, then took a swing at her. She ducked, and he tripped and fell over backwards. By this time, she had been able to take a good look at his face. She made note of his face and clothing.

The man then told Ms. Taylor in English to " '[g]et in the car.' " She replied that he was crazy and that it was over; she picked up her things and started walking. She saw a station wagon stopped at the light and ran up to the driver.

The driver of the car was Beverly Claudino. Ms. Claudino testified that she was driving home from an evening class when she noticed a girl walking down the street, away from some bushes. The girl yelled, " 'You're damned lucky this time' " to a man standing behind her. Ms. Claudino decided to drive by slowly in case the girl needed help. The girl ran to her car, told her " '[t]hat guy tried to rape me,' " and asked to be taken to a telephone. Ms. Claudino took the girl to a security guard across the street. Ms. Claudino later testified that the man was of Mexican descent, but could not describe the clothes he was wearing.

Betsy McCorkhill, a Napa police officer, responded to a radio dispatch at 8:12 informing her that the Napa State Police were standing by with the victim of an attempted rape. Ms. Taylor gave her the description of her attacker as a Mexican male adult, approximately 35 to 39 years old, heavy-set with a "beer belly," wearing a red tank top, yellow shorts, and a faded white or blue scarf with a design on it around his neck. Ms. Taylor described the vehicle as a dark blue pickup with a camper shell.

Officer McCorkhill broadcast the information she had learned over the radio, asking other officers to respond and check the area. She soon received a call regarding a possible suspect in the Kennedy park boat launch area.

California Highway Patrol Officer Ronald McCullough heard the radio call. After he heard the description of the vehicle he drove to the Kennedy park area and met a Napa police department undercover unit. He noticed a truck matching the description moving at a slow speed. He saw a Mexican male of stocky build wearing a red tank top and light orange shorts exit the truck and walk south. The suspect looked in Officer McCullough's direction, appeared startled, and started walking faster. Officer McCullough got out of the car and ordered the man to stop two or three times before he did so. He then stayed with the suspect until two Napa police officers joined him. The suspect, appellant, was then taken into custody and handcuffed.

Napa police officers Ronald Appel and Ken Dunlap also responded to the radio dispatch. The officers noticed a male walking through the park whose clothing was identical to the description they heard broadcast. When they arrived at the scene, Officer McCullough was ordering the suspect to put up his hands, and they assisted him in taking the suspect into custody.

When Valerie Taylor arrived at the park and saw the suspect, she backed up, grabbed Officer McCorkhill's arm and stood behind her. When asked to identify appellant, Ms. Taylor started to cry and replied, " 'I'm not sure.' " After she had a closeup look at him and heard his voice, she positively identified him. Ms. Taylor also made a positive identification of the pickup truck.

Sergeant Vincent Degulio of the Napa Police Department interviewed appellant using Officer Rio Garcia as a translator. Officer Garcia read appellant his *Miranda* rights in Spanish, and appellant agreed to speak with Sergeant DeGulio. When asked about some scratch marks on his left shoulder, appellant said that he scratched himself. He denied having attacked someone that evening and would not cooperate by giving hair samples. Appellant originally said he had gone to the park at 6 in the evening, then later said he arrived after 7. He said he came from his friend's house, driving his friend's truck, which he washed at the boat ramp at Kennedy park. He said he then drove the truck approximately 50 to 75 yards, where the officers found it. He denied driving the truck anywhere else. Appellant said he had been sitting on the grass when the police walked up to him.

Sergeant DeGulio noticed an Oakland Raiders bumper sticker on the truck. There was a wet rag in the truck, as appellant indicated, but the truck had a thin coating of dust on it, and Sergeant DeGulio did not believe that the truck had just been washed and driven 50 yards or so.

### STATEMENT OF THE CASE

On July 25, 1985, appellant was charged with assault with intent to commit rape (Pen. Code, § 220) and false imprisonment by force or menace. (Pen. Code, § 236.) On August 16, 1985, the section 220 charge was dropped due to insufficient evidence.

Jury trial commenced on September 24, 1985. The jury began its deliberations on September 25 and returned a guilty verdict the following day.

On November 6, 1985, appellant was sentenced to the aggravated term of three years in state prison. This timely appeal followed.

## DISCUSSION

### A.

### *The Admissibility of Appellant's Extrajudicial Statements*

The police officers who arrested appellant were permitted to testify regarding certain statements he made at the time of his arrest. In particular, the officers stated that appellant indicated he had not been involved in any attack and had just finished washing his friend's truck approximately 50 to 75 yards from the place at which he was detained. Appellant further explained to one of the officers that he was just sitting on the grass when the other officers approached and began questioning him. Officer DeGulio testified that the truck had a thin coating of dust on it and did not look like it just had been washed. Other officers stated that appellant was walking away from them as they approached, and was not sitting on the grass as he had claimed.

Appellant maintains it was error to allow the introduction of this testimony. He asserts that much of the officers' testimony was irrelevant and cumulative and was primarily used by the prosecution to portray him to the jury as a liar. Appellant first argues the testimony was inadmissible as hearsay statements under Evidence Code section 1220 since they were not offered for the truth of the matter asserted. He further maintains the statements could not be admitted as nonhearsay statements which tended to show consciousness of guilt since the falsity of the statements was shown by the prosecution's witnesses and not through the appellant's own statements. Appellant did not testify at his trial.

Appellant is correct in asserting that these statements could not properly be considered as hearsay statements admissible under the party admissions exception to the hearsay rule. (Evid. Code, § 1220.) Hearsay evidence is a statement offered "to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Clearly the prosecution was not offering this evidence to prove that appellant had been washing the truck immediately prior to being stopped by the police. Appellant's statements were valuable to the prosecution only if proven false. Under these circumstances, the evidence was not hearsay and could not be admitted under the admissions exception to the hearsay rule.

However, we have concluded that the evidence was properly admitted as relevant nonhearsay statements which, when proven false, tended to establish appellant's consciousness of guilt. Appellant acknowledges that "[a] prior statement, although exculpatory in form, may prove highly incri-

minating at the trial because, upon a showing of its falsity, it can constitute evidence of consciousness of guilt." (*People* v. *Underwood* (1964) 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937].) ■■ He nonetheless maintains that the falsity of the statements must be proven by the defendant's own statements.

In support of his position appellant primarily relies on *People* v. *Morgan* (1978) 87 Cal.App.3d 59 [150 Cal.Rptr. 712]. There, the court held that the defendant's exculpatory statement—which conflicted with the victim's testimony—could not be admitted as nonhearsay evidence tending to show a consciousness of guilt because the falsity of the statement had not been established by the defendant's own statements. The court reasoned that "it is logical to conclude that the falsity of the defendant's extrajudicial statement, established by the defendant's own testimony, leads to a reasonable inference of defendant's state of mind—a consciousness of guilt—and thence to a second inference—that defendant acted in conformity with his state of mind and committed the offense charged. But here, the fact that defendant's exculpatory statement conflicts with testimony from a *prosecution* witness, cannot be said to lead reasonably to an inference that it shows defendant's state of mind of a consciousness of guilt. Any such inference would amount to speculation of the rankest sort." (*Id.,* at p. 69, italics in original; *People* v. *Thomas* (1979) 96 Cal.App.3d 507, 510-511 [158 Cal.Rptr. 120]; *People* v. *La Salle* (1980) 103 Cal.App.3d 139, 152 [162 Cal.Rptr. 816]; *People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 865-866 [171 Cal.Rptr. 106].)

We disagree with the *Morgan* court's analysis. What matters is the falsity of the defendant's statements and their relevance to the charges against him, not the means by which they are proven false. False statements which "are apparently motivated by fear of detection, or which, like devious explanations of the possession of stolen goods, suggest there is no honest explanation for the incriminating circumstances" may be used as evidence of the accused's guilt. (*People* v. *Albertson* (1944) 23 Cal.2d 550, 582 [145 P.2d 7] [Traynor, J., conc.].) Here, appellant asserted he had been washing his friend's truck during the time in question and this explanation conflicted with the officers' personal observations. It would be absurd to hold that the prosecution could not reveal the falsity of an accused's statements—no matter how patently untrue—simply because they had to resort to testimony of witnesses other than the defendant.

The absurdity of that position is dramatically illustrated by the facts of *People* v. *Zack* (1986) 184 Cal.App.3d 409 [229 Cal.Rptr. 317]. In *Zack* the defendant claimed he was fishing in Carmel at the time the crime was committed and described with particularity the gas station where he alleg-

edly purchased gasoline. Investigation later revealed that that gas station had stopped selling gas approximately 10 days before the defendant's fishing trip. Furthermore, at the time in question Carmel was experiencing a major rain storm with cold weather, winds in excess of 30 miles per hour, ocean waves over 10 feet and unprecedented hail. The court rejected *Morgan's* reasoning and concluded that the defendant's false statements could be admitted against him despite the fact that their falsity was established by evidence other than the accused's own statements. The court observed, "We do not believe it to be the rankest sort of speculation for the jury to have drawn the inference that appellant was lying when he said he was fishing in Carmel at a time when it was experiencing [an] unprecedented rain and hail storm or that he purchased gasoline from a station with inoperative pumps. From our perspective, the inference that such explanations are untrue permits the drawing of the next inference of consciousness of guilt." (184 Cal.App.3d at p. 418.)

Appellant's position is further undermined by *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468]. In *Green* the defendant argued that the trial court erred in instructing the jury on consciousness of guilt (CALJIC No. 2.03) because the asserted falsity of his extrajudicial admissions was based solely on their inconsistency with the prosecution's case. The court noted that the record contained testimony from numerous witnesses which cast doubt on the defendant's statements. In these circumstances, the court concluded, "the jury could reasonably infer [defendant's statements] were all false and were deliberately invented by defendant to shift suspicion away from him. Such evidence supports an inference of consciousness of guilt [citations] and hence warrants the giving of CALJIC No. 2.03." (*Id.* at p. 41.) Although the court did not expressly criticize or overrule *Morgan,* the *Green* decision raises serious questions about *Morgan's* validity. (*People* v. *Kane* (1984) 150 Cal.App.3d 523, 533 [198 Cal.Rptr. 73] ["[t]o the extent that the reasoning in *Morgan* could be seen as inconsistent ... with *Green,* it is ... overcome by" *Green*].)

Here, appellant offered an exculpatory explanation for his whereabouts which, according to the officers' testimony, was an obvious prevarication. If the jurors believed the officers' statements it was perfectly reasonable for them to infer that appellant's lies evidenced a consciousness of guilt. Accordingly, appellant's statements were directly relevant to the question of his guilt or innocence and there was no error in admitting the officers' testimony concerning appellant's statements and their own conflicting observations.

B.

*The Propriety of Giving CALJIC Nos. 2.71 and 2.72*

Over defense objection the court gave CALJIC Nos. 2.71 and 2.72.[1] Appellant claims this was error because his statements were not admissions. He asserts the combined effect of the assertedly erroneous instructions and the prosecutor's argument[2] was extremely damaging to his defense. In essence, appellant is claiming that his statements could not be considered admissions since admissions must be *against interest*. We disagree.

Witkin notes that "prior statements which are useful to an opponent are most likely to be those against the party's interest when made ... [and this] tend[s] to create the erroneous impression that only disserving statements are admissible." (1 Witkin, California Evidence (3d ed. 1986) § 640, p. 628.) Witkin concludes that "[t]he correct rule, however, is that any prior statement of a party may be offered against him, even though it may not have been against his interest or even may have been self-serving when made." (*Id.*; IV Wigmore on Evidence, § 1048, at p. 5 ["the subject of an admission is *not limited to facts against the party-opponent's interest at the time of making it*" (italics in original)]; *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 69 [111 Cal.Rptr. 433] [statements which were not against interest were nonetheless admissions since they were "statements of a party relevant to the case at trial"].)

Appellant's argument is untenable because it confuses hearsay admissions of a party—which must be offered for the truth of the matter asserted to be admissible as an exception to the hearsay rule—with admissions which are not offered as hearsay evidence. Although, as earlier stated, appellant's statements were not admissible as hearsay statements because they were not offered for the truth of the matters asserted, those statements were properly

---

[1] CALJIC No. 2.71 provides as follows: "An admission is a statement made by defendant other than at his trial which does not by itself acknowledge his guilt of the crime(s) for which he is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether the defendant made an admission, and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission of the defendant should be viewed with caution."

CALJIC No. 2.72 states: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by him outside of this trial. [¶] The identity of the person who is alleged to have committed a crime is not an element of the crime. Such identity may be established by an admission."

[2] The prosecutor told the jurors they must consider the following questions: " 'Is the victim telling the truth, or isn't she?' " and " 'Is the defendant a liar, or isn't he?' "

characterized as admissions since an admission simply is any extrajudicial statement—whether inculpatory or exculpatory—"which tends to prove his guilt when considered with the rest of the evidence." (CALJIC No. 2.71)[3] Because appellant's statements were admissions the court did not err in giving CALJIC Nos. 2.71 and 2.72.

C.

### The Propriety of Giving CALJIC Nos. 2.60 and 2.61

The court gave CALJIC instructions Nos. 2.60 and 2.61[4] either sua sponte or at the prosecution's request.[5] Appellant did not request these instructions, but did not object to them. ■ He now asserts that it was error to instruct the jury on the accused's right not to testify—despite the absence of an objection—because these warnings drew attention to his silence as prohibited by *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

Several California Courts of Appeal have considered whether it is proper to give such instructions where the defendant objects. The decisions are conflicting. (*People* v. *Brown* (1967) 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368] [no error where instruction given over defendant's objection]; *People* v. *Molano* (1967) 253 Cal.App.2d 841, 847 [61 Cal.Rptr. 821, 18 A.L.R.3d

---

[3] We recognize that in *People* v. *La Salle, supra,* 103 Cal.App.3d 139, the court concluded that CALJIC No. 2.71 was "ambiguous and misleading" because it made it appear "that *every* statement made by a defendant constitutes an 'admission' if the statement 'tends to prove guilt when considered with the rest of the evidence.'" (103 Cal.App.3d at pp. 150-151, 153.) The court noted this was a flaw since "a jury cannot be expected to know what kind of a defendant's statement constitutes an 'admission' which tends to prove defendant's guilt." (103 Cal.App.3d at p. 151.) It thus concluded that the instruction should be amended to read: "A statement made by a defendant is an admission whenever the matter stated in the statement, if *true,* . . . does tend to prove his guilt . . . ." (Italics added.)

We disagree with the *La Salle* court. First, a statement does not have to be offered for its truth to be accepted as an admission. Second, we apparently have more faith in the jury than the court in *La Salle*: there is no magic in determining whether a particular statement tends (or does not tend) to prove one's guilt. The jury, as factfinder, is perfectly equipped to make such determinations based on the existing CALJIC instructions without further explanation by the court.

[4] CALJIC No. 2.60 provides that: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference from the fact that he does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way." CALJIC No. 2.61 states that: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support a finding against him on any such essential element."

[5] The record does not indicate whether the court gave this instruction of its own volition or whether it was requested.

1328] [improper to give instruction over defense objection]; *People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418] [no error]).[6] A far more difficult issue arises where an appellant asserts it was error to give the instructions even where he did not object below.[7]

Our Supreme Court has noted that instructions regarding the defendant's right to remain silent "contain[ ] many of the vices condemned in *Griffin* v. *California* ..., including the evil of pointing up to the jury the defendant's failure to testify. However, the instruction also seeks to prevent the evil condemned by *Griffin* in that it expressly forbids the jury from drawing an inference of guilt from the defendant's failure to testify. Whether or not it is to the defendant's advantage to have the instruction given manifestly is debatable." (*People* v. *Gardner* (1969) 71 Cal.2d 843, 853-854 [79 Cal.Rptr. 743, 457 P.2d 575].)

In *People* v. *Young* (1978) 85 Cal.App.3d 594 [149 Cal.Rptr. 524] another division of this court had an opportunity to decide the question now confronting us. The court there noted the "debatable" benefit of instructions regarding a defendant's right to remain silent but nevertheless concluded there was no error in giving them, either sua sponte or at the prosecution's request, when the defendant makes no objection. (*Id.,* at p. 609.) The court reasoned that "[p]resumably, if the defendant perceives a danger in the instruction, he will object. If he declines to object any prejudice is speculative since it is possible that the instruction actually worked to the defendant's advantage." (*Id.*)

Finally, we note that the United States Supreme Court has held that it is not error to give a cautionary instruction—even in the face of the defendant's objection.[8] (*Lakeside* v. *Oregon* (1978) 435 U.S. 333 [55 L.Ed.2d 319, 98 S.Ct. 1091].) The court observed, "[t]he petitioners' argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all." (*Id.,* at p. 340, fns. omitted.)

---

[6]These cases all considered the propriety of giving former CALJIC No. 51 which was substantially similar to CALJIC No. 2.60.

[7]Appellant states that in *People* v. *Horrigan* (1967) 253 Cal.App.2d 519, 522-523 [61 Cal.Rptr. 403], the court concluded that it would be error to give an instruction concerning the defendant's right not to testify even *without* a defense objection. This comment clearly is dictum and has little precedential value in connection with the issue before us. In *Horrigan* the defendant offered the instruction, withdrew it and then maintained on appeal it was mandatory for the court to give the instruction on its own motion. *Horrigan* thus presented facts quite different from those in the instant appeal.

[8]Because appellant did not object to these instructions below we need not decide whether it is proper to give CALJIC Nos. 2.60 and 2.61 over a defense objection.

In our opinion, *Young* and *Lakeside* are the better reasoned decisions on this question. While it must be acknowledged that the instructions here in issue *may* have the effect of highlighting the very fact they are intended to minimize—a theoretical problem with many salutary judicial admonitions required to be given—we simply are unpersuaded by appellant's argument. "It is patently obvious to the jury when the accused fails to take the stand, and the instruction[s] admonish[ ] the jurors that the defendant is exercising his constitutional right in not testifying, and that his failure to testify is not to be considered in determining his innocence or guilt." (*People* v. *Brady, supra,* 275 Cal.App.2d at p. 992.) We find it difficult to believe that these instructions will so emphasize the defendant's silence that they will cause the jury to draw the precise inference they have been instructed to avoid.

The judgment is affirmed.

Smith, J., and Benson, J., concurred.