[Crim. No. 5380.   First Dist., Div. Two.   Feb. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN GEORGE, Defendant and Appellant.

Harold D. Messner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—Defendant, John George, appeals from a judgment rendered on a jury verdict finding him and his codefendant Forester guilty of first degree robbery (Pen. Code, § 211) and the lesser-included offense of assault with a deadly weapon (Pen. Code, § 245, subd. (a)).[1] He contends that: the evidence is insufficient to support the judgment; the court erroneously directed a verdict of guilty; the conflict of interest between him and his codefendant prevented the public defender from providing him with effective representation; and he was not informed of his right to separate counsel.

Viewing the record most strongly in favor of the judgment, as we must in assessing the sufficiency of the evidence, the facts are as follows: about 3:45 p.m. on May 20, 1965, Mr. Kerwin, who lived at 615 Second Avenue, three doors south of the intersection of Second Avenue and Balboa Streets,[2] in San Francisco, looked out of his front window and observed the activities of two men on the south side of Second Avenue.

---

[1] Forester's appeal was dismissed at his request on March 27, 1967.

[2] Balboa runs east and west; Second Avenue, north and south.

While conversing, the men walked toward the grocery store on the southeast corner of the intersection. Just before they reached the store, they stopped and one man (subsequently identified as defendant) proceeded toward the grocery store owned by Kerwin's friend, George Pappas, who wore a hearing aid. Meanwhile, the second man (subsequently identified as Forester) remained on Second Avenue until defendant returned, made a tapping gesture at his right ear, and then ran diagonally across the intersection and into a house at 580 Second Avenue. Forester then began to walk in the direction of the store. He entered and at gunpoint forced Pappas to turn over the contents of the cash register, about $65 in bills and change.

Kerwin immediately left his home and proceeded to the store. When he arrived, he saw Forester standing by the cash register with Pappas, and proceeded towards them but retreated as Forester turned around. Kerwin tried to kick the door shut from the outside, but Forester opened it, knocked Kerwin down, shot at him and ran into the house at 580 Second Avenue. Kerwin saw Forester's revolver and the flash as it fired. The coat he wore on the day of the robbery had a hole made by a revolver bullet without powder burns.

A few minutes later, Officers Olson and Dachauer of the San Francisco Police Department arrived at the grocery store and immediately proceeded to the house at 580 Second Avenue. Officer Olson observed two men in the back yard. As Olson approached, Forester jumped over the back fence onto the property at 26 Balboa Street and defendant ran up the back stairs through the house, where he was apprehended by Officer Dachauer. Meanwhile, another officer arrived on the scene and arrested Forester, who crouched in the corner of the porch of 26 Balboa Street. A small passageway led from the back fence of 580 Second Avenue to the front of 26 Balboa Street. Forester was identified as the robber by both Pappas and Kerwin and by Officer Olson as the men who had jumped over the back fence. Under the back porch of 580 Second Avenue, the officers found a green coat and black cap that were identified by Pappas and Kerwin as the clothes worn by Forester at the time of the robbery. At the time of his arrest, Forester carried six .38 caliber cartridges and about $35 in currency and change; an additional $8.70 was found on the back porch of the house on Second Avenue.

While in custody and after being advised of his constitutional rights, Forester stated that since 2:30 p.m., he had been playing dice with defendant and others at the home on Second Avenue. He had about $25 with him and had won $10-$15 in two hours. An argument ensued and he became fearful of an attack on his person and fled. He was chased but made his escape over the back fence and did not know why he was arrested. He denied any knowledge of the robbery. His testimony at the trial was substantially the same, except that he denied knowing or seeing defendant at any time on the day of the robbery before his arrest. He had picked up the cartridges found in his pocket after the arrest while cleaning the storeroom of the restaurant where he worked. He could not describe the location of the place where he was playing dice nor could he give the name of the owner of the house or any of the other players. He was not familiar with the Balboa and Second Avenue neighborhood or the grocery store and its owner. On cross-examination, Forester's testimony was impeached by a showing that he had been previously convicted of two prior felonies.

Defendant did not take the stand. The evidence, however, established that he lived in the area of 582 Second Avenue and had been frequently seen in the neighborhood by Kerwin. He was a frequent customer of Pappas and often went to 580 Second Avenue to see the daughter of the owner of the building. In a statement made after his arrest, after being duly advised of his rights, defendant indicated that he met Forester while walking up Second Avenue and proceeded toward the house. Before he went inside the house, he saw Forester come out and fire a shot.

Defendant first contends that, as a matter of law, the evidence is insufficient to support his convictions for first degree robbery and assault with a deadly weapon. In view of the evidence detailed above and the eyewitness account of the offenses and identification of defendant and Forester, the only question remaining concerns defendant's participation in the offenses.     Section 31 of the Penal Code provides that any person who aids or abets, directly or indirectly, by words or gestures, in the commission of a crime, is a principal equally guilty with the perpetrator (*People* v. *Ellhamer,* 199 Cal.App.2d 777 [18 Cal.Rptr. 905]; *People* v. *Fleming,* 191 Cal.App.2d 163 [12 Cal.Rptr. 530]). His presence at the actual commission is not necessary (Pen. Code, § 31; *People*

v. *Pearl,* 211 Cal.App.2d 783, 789 [27 Cal.Rptr. 664]).

■ Whether one has aided and abetted in the commission of a crime is a question of fact for the jury to determine from the totality of the circumstances proved (*People* v. *Silva,* 143 Cal. App.2d 162, 169 [300 P.2d 25]). Factors that the jury may consider in making such determination include companionship and the conduct of the accused before and after the offense (*People* v. *Fleming, supra,* p. 168; *People* v. *Perryman,* 250 Cal.App.2d 813, 820 [58 Cal.Rptr. 921]).

■ As to the robbery, defendant contends that his presence in the neighborhood and alleged unplanned meeting with Forester is consistent only with his innocence since he lived in the area and frequently visited the house at 580 Second Avenue. But defendant was a regular customer of the grocery store and must have known that Pappas wore a hearing aid. Kerwin's uncontroverted testimony indicated that on the afternoon of the robbery, defendant and Forester walked down Second Avenue in the direction of the grocery store, stopped short of the corner and talked together. After this conversation, defendant proceeded to the corner and.returned a few minutes later to meet Forester and tapped his forefinger at his right ear. This could reasonably be construed to be a signal that Pappas was on duty. Thereafter, defendant ran across the street into the house at 580 Second Avenue while Forester proceeded to enter the store, robbed Pappas and shot at Kerwin. After the robbery, Forester ran from the store and entered the same house on Second Avenue that defendant had entered a few minutes earlier. Shortly thereafter, both were apprehended in the immediate vicinity after having attempted to elude the police. Thus, the jury could reasonably conclude that defendant aided and abetted Forester's robbery of the grocery store and shared the criminal intent.

■ The identical reasoning applies to the lesser-included offense of assault with a deadly weapon. Defendant argues that there is no indication that he knew that Forester was armed. However, defendant's participation and knowledge of the robbery prior thereto would lead to a reasonable inference that he knew Forester was armed. Furthermore, the assault by Forester on Kerwin while attempting to escape was the natural and probable consequence of the robbery. An aider and abettor is liable for the natural or probable consequences of any act that he knowingly aided and encouraged (*People* v. *Belenger,* 222 Cal.App.2d 159 [34 Cal.Rptr. 918]).

■ Defendant next argues that the trial court's comments to the jury amounted to a directed verdict of guilty, and were recently held to be error in *People* v. *Brock,* 66 Cal.2d 645 [58 Cal.Rptr. 321, 426 P.2d 889].[3] We agree. Preliminarily, we note that the instant case was tried two years before *Brock.* In view of certain language used by the Supreme Court in *People* v. *Friend,* 50 Cal.2d 570, 578 [327 P.2d 97], it is understandable that the trial judge would feel justified in commenting as he did. However, *Friend* was clarified in *Brock* where the type of statement here given was disapproved.

In *Brock,* the court told the jury that in its opinion, the defendant's guilt had been proven beyond a reasonable doubt. The Supreme Court held that the statement was not a proper exercise of the trial court's privilege to comment on the evidence as conferred by section 10 of article VI of the state Constitution and was prejudicially erroneous as it prevented the jury from properly considering the case. The court held that it provided ''for the jury a means to avoid the preliminary determinations called for by the instructions of the law and instead to rely on the words of the judge in returning a conviction'' (*People* v. *Brock, supra,* p. 651].

The Attorney General contends that the instant case can be distinguished from *Brock,* as here the court discussed the evi-

---

[3]The court instructed as follows: ''By the Constitution of this State, a judge of this court presiding in the trial of an action is authorized within proper bounds to comment on the evidence and the testimony and the credibility of any witness. From a consideration of the evidence in this case, it appears to the Court that the defendant, Eugene Forester, is the person who robbed Mr. Pappas, that Mr. Forester at the time was armed with a loaded revolver and that in the perpetration of the robbery he was aided and abetted by John George, and that, therefore, each of the defendants is guilty of robbery of the first degree.

''Likewise, from the evidence, it appears to the Court that the defendant, Eugene Forester, did assault Mr. Pappas with a deadly weapon. The Court makes no comment one way or the other as to whether such assault was with or without intent to commit murder. If you find that Mr. Forester is guilty of assaulting Mr. Pappas with a deadly weapon with intent to commit murder, or of assaulting Mr. Pappas with a deadly weapon, it appears to the Court that Mr. George is guilty of the same offense of which you find Mr. Forester guilty.

''Now, I would caution you that it is your right and your duty to exercise the same independence of judgment in weighing my comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses and the arguments of counsel. You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as a trial judge has to express his personal thoughts on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict, and may not be used, and is not used in this case, to impose his will upon you or to compel a verdict.''

dentiary basis upon which it grounded its opinion. But the court did not discuss or evaluate the testimony of any of the various witnesses or indicate to the jury on what evidence it based its conclusion that defendant was an aider and abettor. The judge simply told the jury that in its opinion, defendant Forester robbed and assaulted Pappas, that defendant George aided and abetted in both offenses, and that each defendant was guilty of both offenses. The court failed to clearly indicate that while they could find George guilty only if they first found Forester guilty, George's guilt did not automatically follow from Forester's but depended on other evidentiary considerations. We see no material distinction between the possible effect on the jury of the conclusionary opinions concerning defendant's guilt as expressed by the trial court here and in Brock.

Furthermore, the judge did not advise the jury that it could reject his views if it so chose but rather, in the third paragraph of his comment, he used the exact language objected to by the Supreme Court in *Brock*. Thus, this paragraph is subject to the same criticism expressed therein, i.e., "the language used unfortunately also conveys the idea that his comment is on a par with the testimony and subject to the same independence of judgment in determining the case" (p. 652).

The court's erroneous statement need not necessarily result in reversal. This court held in *People* v. *Thompson*, 252 Cal.App.2d 76, 93 [60 Cal.Rptr. 203], where a similar statement was given, that the evidence against defendant was so overwhelming as to justify the application of article VI, section 13 of the California Constitution, and we affirmed the judgment. So here, the evidence, though circumstantial, clearly establishes defendant as an abettor and no other reasonable inference could have been drawn by the jury. Defendant was familiar with the store and was a customer of Pappas. Kerwin's testimony of defendant's furtive conduct strongly indicated that he was casing the store for Forester. This, together with defendant's immediate rendezvous with Forester in the backyard of 580 Second Avenue where part of the loot was found, and defendant's flight on the appearance of the officers, presents a formidable and uncontroverted chain of circumstances for which the defense offered no explanation at the trial. We conclude it is not reasonably probable that in the absence of the error, the jury would have reached a result

more favorable to defendant (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]).

Defendant next contends that he was deprived of his right to effective aid of counsel as he and Forester were represented by the same deputy public defender. The record indicates that both defendant and Forester objected to the public defender but not on the basis now asserted.[4] The People contend that in the absence of an objection to the joint representation, this matter may not be raised for the first time on appeal, citing *People* v. *Byrd,* 228 Cal.App.2d 646 [39 Cal.Rptr. 644]. However, we think that since the case has been tried and we have a record that enables us to employ hindsight to ascertain whether or not there was an actual conflict of interest between defendant and Forester, the better practice is for us to forego the procedural objection and consider the contention on its merits (*People* v. *Watkins,* 248 Cal.App.2d 603 [56 Cal.Rptr. 734]).

As stated in *People* v. *Odom,* 236 Cal.App.2d 876, 879-880 [46 Cal.Rptr. 453], the fact that a single attorney is appointed to represent multiple defendants does not mean that an individual has been deprived of his right to counsel. Rather, an actual or potential conflict of interest among the codefendants must appear. The *Odom* opinion assembles a useful category of the principal situations in which the courts have discerned conflicts of interest such as: when it would profit one defendant to attack the credibility of another; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another; when one defendant has a record of prior felony convictions and the other does not; when the defenses of the codefendants are factually inconsistent; or when appointed counsel believes a conflict of interest may exist.

Defendant argues that a conflict of interest exists between him and Forester because of the discrepancy between their post-arrest statements.[5] He contends that Forester's statement linking them together in a dice game on the afternoon of the robbery conflicts with defendant's statement that he was in the neighborhood because he lived there and fre-

---

[4]Forester attempted to represent himself; defendant attempted to disqualify the court and asserted that the public defender was too busy.

[5]As the case was tried on June 22, 1965, the *Dorado* and *Escobedo* rules apply (*People* v. *Doherty,* 67 Cal.2d 9 [59 Cal.Rptr. 857, 429 P.2d 177]). The record indicates that both defendant and Forester were properly advised of their rights under the applicable rules and no contentions concerning the statements are raised on appeal.

quently visited at 580 Second Avenue. However, defendant's presence in the neighborhood, regardless of the reason, was consistent with his participation in the robbery. Forester also admitted being in the area. His testimony at the trial that he had not seen defendant prior to the robbery contradicted both his own prior statement and defendant's. Such contradiction, however, is not in itself a sufficient indication of a conflict of interest. Both Forester and defendant denied any knowledge of or participation in the offenses charged. The state of the evidence was such that if the jury believed the prosecution witnesses, both were guilty; if not, both were innocent. There was no material inconsistency between the stories of Forester and defendant and no significant conflict in their separate denials.

Therefore, we cannot find any indicia of a conflict of interest between defendant and Forester. None of the situations outlined in *People* v. *Odom, supra,* are present here. Furthermore, defense counsel expressed himself that although at one time he believed a conflict may have existed, he had resolved the matter in his own mind and that one did not exist. There being no conflict of interest between defendant and Forester, we conclude that defendant was not deprived of the effective assistance of counsel (*People* v. *Watkins, supra*).

■ Finally, defendant argues that the court failed to instruct him concerning his right to have separate counsel. He cites *Lollar* v. *United States* (D.C. Cir. 1967) 376 F.2d 243, wherein a conviction was reversed because the record was devoid of any suggestion that the court, in assigning counsel, explained the risks of joint representation to the codefendants or advised them of their right to have separate counsel. Apart from the fact that our courts have not followed the more stringent rule of the federal cases, we note that the court in *Lollar* based its holding on its finding that some prejudice resulted from the joint representation.[6] Here, as we have indicated above, there was no conflict of interest and we see no prejudice. It follows that the court's failure to advise defendant of his right to separate counsel was harmless

---

[6]Lollar and his codefendant were convicted of robbery and assault with a deadly weapon. Lollar, an admitted homosexual who did not like being referred to as a male, was consistently referred to as a female by the codefendant. Their defense was premised on the claim that the complainant had been engaging in homosexual acts with them. Lollar had a criminal record while his codefendant did not. Both took the stand. The court found that a separate attorney would have kept Lollar off the stand.

434

beyond a reasonable doubt (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]).

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied March 27, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1968.