[Crim. No. 39146. Second Dist., Div. Five. Sept. 10, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ELISALA TAUFI FAGALILO, Defendant and Appellant.

COUNSEL

Robert McMahon, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Michael Nash and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—Appellant was convicted of one count of robbery and three counts of assault by means of force likely to produce great bodily injury and with a deadly weapon. He was sentenced to state prison.

During the afternoon of May 23, 1980, appellant and three other male Samoans, Herman Tautolo[1] and codefendants Fetu Gaoa and Emi Tauanuu entered the Thrifty Drugstore located at 4402 Atlantic in Long Beach. Appellant's companions walked in a group past the sole cashier on duty, Alice Danforth, and were talking boisterously so as to draw attention away from appellant, who was straggling behind them.

Mrs. Danforth's attention was directed toward a customer at her cash register. When she rang up the purchase and the cash register drawer opened, appellant surprised her from behind, told her to move and hit her in the breast with his elbow. He then shoved her onto the floor. Mrs. Danforth jumped to her feet but appellant shoved her again. She yelled, "Robbery, stop," and asked appellant what he was doing. Appellant did not answer but instead removed all the bills, $121, from the register drawer. He then ordered Mrs. Danforth to remove the drawer from the register, but she shoved him away and appellant left the register area.

Mr. Richard Williamson, assistant manager of the drugstore, was in the back office when he heard Mrs. Danforth call for security over the loud-speaker system. He ran toward the front of the store, but as he passed the liquor department he observed codefendant Tauanuu attempting to conceal an 18-inch-tall bottle of wine behind his leg. Mr. Williamson thought he was trying to steal it and told him to put it down. Instead Tauanuu threw the bottle at him and ran out of the store.

Mr. Williamson ducked, and the bottle glanced off his back and struck a customer, Mr. Frank Castillo, in the head, knocking him unconscious. Mr. Castillo's wife, Natalie, was struck on the side of her head by fragments of the broken bottle, which broke the glass out of her eyeglasses. The wine struck her in the face and eyes.

---

[1]Herman Tautolo was not a party in the instant trial.

Mr. Williamson followed Tauanuu outside and stopped just beyond the exit. Tauanuu had run across San Antonio east toward Olive. Two other men were also running eastbound on San Antonio. As Mr. Williamson stood watching, he was struck from behind by Gaoa.

The manager of the store, Gary Ray, also heard the call for security and observed Williamson dodge the wine bottle thrown by Tauanuu. He saw Tauanuu run from the store and observed another of the robbers, Gaoa, strike Williamson from behind and run across the street himself. Mr. Ray had observed appellant and codefendants Tauanuu and Gaoa in the store about five minutes before the incident.

Janet Ritschel entered the store just as the robbery was completed. She saw appellant and another man running toward the rear exit with angry expressions on their faces. She heard yelling and screaming and breaking glass. She was struck by wine and glass from the bottle which had shattered on Mr. Castillo's skull.

Terrence Tribbey, an off-duty security officer for Edison Company, had made a purchase and had just left the store when he heard a commotion and disturbance behind him. He observed Mr. Williamson being struck down by Gaoa just outside the store.

Mr. Tribbey pursued Gaoa eastbound on San Antonio. Gaoa then crossed San Antonio through traffic, turned south on Olive and entered an alley just south of San Antonio. Another individual had run from San Antonio to the alley between two apartment buildings. In the alley, approximately four apartment houses down from Olive, appellant, Tauanuu, and Herman Tautolo were waiting at a Ford Galaxy with the engine running. The first number of the vehicle's license plate had been obscured by tape. The uncovered portion of the license plate read 80NLN.

Once in the alley, Gaoa stopped, approached Mr. Tribbey and struck him in the face and throat, knocking him to the ground. As a result of this blow, Mr. Tribbey suffered a bruised larynx requiring hospital care. Mr. Tribbey got up off the ground and yelled, "[H]alt, security." He was licensed to carry mace and had a canister of mace in his hand. Gaoa advanced on him once again, but Mr. Tribbey discharged the canister at his head and Gaoa withdrew to the waiting vehicle. The others had already gotten in the car and one of them yelled, "Let's get out of

here." Mr. Tribbey approached the car and continued to discharge the canister through the open windows as the vehicle sped away. He provided the police with the license number and a description of the getaway car.

Detective Dennis Weaver of the Long Beach Police Department, robbery detail, went with three other officers to the address at which the Ford was registered, somewhere in the 1600 block of East 17th Street in Long Beach. The vehicle was not there, but Detective Weaver was advised by a patrol officer, Officer Castillo, that he had observed the vehicle parked in the driveway in the 1300 block of East 16th Street. The officers went to that location, found the car and arrested appellant and Herman Tautolo.

Appellant offered no defense.

## DISCUSSION

Appellant makes a variety of contentions, none of which has merit. He raises issues as to the sufficiency of the evidence to support the judgment, identification procedures, misconduct of the prosecutor, and instructions.

■ Appellant's primary attack on the sufficiency of the evidence is to challenge his identification as the robber by Mrs. Danforth. He contends her identification testimony was weak and inconsistent and unworthy of belief. He points out that at the preliminary hearing she identified codefendant Tauanuu as the robber. Furthermore, in her initial testimony at trial she again identified Tauanuu as the robber. However, she then changed her testimony and identified appellant as the robber. She explained she had been confused because the defendants had changed their hair styles, and because when she identified Tauanuu from the witness stand she could not see appellant very well where he was sitting. She testified she was absolutely certain appellant was the robber. In addition, Mrs. Danforth had identified a photo of appellant on the day of the robbery and identified him in a lineup shortly thereafter. The weaknesses or inconsistencies in her identification testimony were solely for the jury to evaluate. (*People* v. *Rist* (1976) 16 Cal.3d 211, 216 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Jackson* (1960) 183 Cal.App.2d 562, 568 [6 Cal.Rptr. 884].) The identification testimony of Mrs. Danforth was itself sufficient to convict appellant of

the robbery. It was also corroborated by the testimony of the other witnesses, such as Janet Ritschel, who identified appellant as one of the men she saw leaving the store with an angry look, and store manager Gary Ray who saw appellant in the store just before the incident.

■ Appellant mentions several other issues relating to identification testimony. Officer Weaver testified for the prosecution that he conducted photographic showups and lineups for the witnesses shortly after the robbery. He testified about who identified whom during these procedures. Appellant contends this was inadmissible hearsay unless the prior identifications were shown to be admissible as prior inconsistent statements under Evidence Code section 1235, or as prior consistent statements under conditions specified in Evidence Code sections 1236 and 791. This argument is without merit. Evidence of an extrajudicial identification is independently admissible evidence of identity. (Evid. Code, § 1238; *People v. Scoglio* (1969) 3 Cal.App.3d 1, 5 [82 Cal.Rptr. 869]; *People v. Gould* (1960) 54 Cal.2d 621, 626 [7 Cal.Rptr. 273, 354 P.2d 865].)[2]

Appellant contends there were identification procedures employed during trial which were unduly suggestive and which tainted the in-court identifications by Mrs. Danforth and Mrs. Ritschel. Appellant refers to the fact that during a recess following her initial identification of codefendant Tauanuu as the robber, Mrs. Danforth "[had] an opportunity to refresh [her] memory from some photographs that had been shown to [her] shortly after the incident," and then identified appellant as the robber. Mrs. Ritschel, who had not previously attended a lineup or been shown photos by the police, was shown a group of photos by the prosecutor the day before her testimony. Appellant made no objection in the trial court that there was anything suggestive or improper about this procedure or that it tainted the witnesses' in-court identifications. He may not raise this argument for the first time on appeal. (*People v. Williams* (1970) 2 Cal.3d 894, 909 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People v. Colligan* (1979) 91 Cal.App.3d 846, 850 [154 Cal.Rptr. 381]; *People v. Johnson* (1974) 38 Cal.App.3d 1, 6 [112 Cal.Rptr. 834].)

---

[2]Appellant's reliance on *People v. Gould, supra*, 54 Cal.2d at page 631, and *In re Johnny G.* (1979) 25 Cal.3d 543, 547 [159 Cal.Rptr. 180, 601 P.2d 196], is wholly misplaced. They state that an extrajudicial identification which cannot be confirmed at trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. Here Mrs. Danforth's prior identification of appellant was confirmed by her in-court identification of him, and there was ample corroborating evidence from other witnesses.

■ Appellant also challenges the sufficiency of evidence to support his conviction on three counts of assault by means of force likely to produce great bodily injury. Codefendant Tauanuu threw a wine bottle at assistant manager Williamson. The bottle glanced off Williamson's shoulder, and struck Mr. Castillo on the head and Mrs. Castillo about her glasses.

This evidence was sufficient to establish a violation of Penal Code section 245. (*People* v. *Martinez* (1977) 75 Cal.App.3d 859, 862-864 [142 Cal.Rptr. 515].) The evidence was also sufficient to establish appellant's liability as an aider and abetter of Tauanuu's assault. The defendants entered the store together and escaped together. The jury could reasonably infer that they were jointly engaged in a robbery, the natural and probable consequences of which included resistance by any of the defendants to avoid capture. (See *People* v. *Durham* (1969) 70 Cal.2d 171, 181-185 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *George* (1968) 259 Cal.App.2d 424, 429 [66 Cal.Rptr. 442]; *People* v. *Bradford* (1972) 28 Cal.App.3d 695, 706-707 [104 Cal.Rptr. 852].)[3]

■ Appellant next contends the prosecutor was guilty of misconduct because the prosecutor stated in front of the jury that there were two preliminary hearings, and because the prosecutor failed to prevent what appellant regards as a prejudicial statement by a witness, Officer Weaver. Neither contention has merit. The statements in question were not prejudicial, and even if there was any ambiguity creating a potential for prejudice, it could easily have been cured by a proper admonition, and the point was therefore waived by appellant's failure to object below. (*People* v. *Green* (1980) 27 Cal.3d 1, 34-35 [164 Cal.Rptr. 1, 609 P.2d 468].) No prejudice is apparent from the prosecutor's reference to "two different preliminary hearings on the same subject matter," and "the preliminary hearing in connection with this particular trial of the three defendants." The jury was aware of a fourth participant in the robbery, who was not joined as a defendant, and there is no reason to believe any sinister inference would be drawn from reference to two preliminary hearings. As to Officer Weaver, he was confused as to the date of the crime and testified: "Q [Counsel for the People] All right.

---

[3]Appellant also contends there was insufficient evidence at the preliminary hearing to justify holding appellant to answer, and that therefore the trial court erred in denying appellant's motion under Penal Code section 995. The denial of the motion having been followed by a full trial on the merits with sufficient evidence to justify a conviction, any question as to the sufficiency of evidence at the preliminary hearing is moot. (*People* v. *Chambers* (1980) 108 Cal.App.3d 985, 990-991 [166 Cal.Rptr. 815].)

Are you one of the investigating officers in this case? [¶] A Yes, ma'am. [¶] Q When were you officially assigned to the case? [¶] A Umm, roughly around the 20th of May. [¶] Q Now, if the event allegedly occurred May 23rd, does that refresh your recollection? [¶] A It does, although I was assigned to the case involving other crimes." Appellant argues this last statement means appellant was suspected of other crimes, but that implication is not at all clear, and could easily have been dispelled by an admonition. (*People* v. *Green, supra.*)

■ Finally, appellant contends the court erroneously instructed the jury on aiding and abetting. He contends that CALJIC No. 3.01 (1979 Revision) as given by the trial court[4] is defective because it fails to state that the aider and abetter must *intentionally* aid, promote, encourage, or instigate the crime. (Compare *People* v. *Ott* (1978) 84 Cal.App.3d 118, 128-130 [148 Cal.Rptr. 479]; *People* v. *Vernon* (1979) 89 Cal. App.3d 853, 869 [152 Cal.Rptr. 765], with *People* v. *Yarber* (1979) 90 Cal.App.3d 895, 909-917 [153 Cal.Rptr. 875].) *Yarber* was an unusual case. A wife orally copulated her husband in the presence of a minor. The minor then orally copulated the husband. Both the husband and the wife were convicted of oral copulation with a minor, the theory against the wife being that by performing the act first herself, she encouraged the minor to follow suit. There being conflicting evidence as to the motivations of the wife and the minor, the court held the jury should have been instructed that the wife must have *intentionally* aided, promoted, encouraged, or instigated the act of the minor. The court discussed various hypothetical situations in which a person could know the unlawful purpose of the perpetrator and could perform an act which aided the perpetration, but without criminal intent. (*Id.*, 90 Cal.App.3d at pp. 914-915.) The court acknowledged that normally when a person aids the perpetrator with knowledge of the perpetrator's unlawful purpose, that person's own criminal intent is presumed (*id.*, at pp. 913-914), and in the absence of evidence to the contrary, may be regarded as established. (*Id.*, at p. 916.) The court concluded on the peculiar facts of that case that there was room for doubt, and that prejudicial error resulted from the trial court's failure to modify the CALJIC instruction.

---

[4]CALJIC No. 3.01 (1979 Revision) provides: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime. [Mere presence at the scene of a crime and failure to take steps to prevent a crime do not in themselves establish aiding and abetting.]"

A subsequent case has declined to apply the reasoning of *Yarber*, where there were no unusual facts which would suggest that the defendant aided the perpetrator with knowledge of the perpetrator's unlawful purpose, but without criminal intent on the defendant's part. (*People v. Lopez* (1981) 116 Cal.App.3d 882, 888-889 & fn. 1 [172 Cal.Rptr. 374].) In the instant case, appellant was the actual perpetrator of the robbery, and his liability for the assaults committed by one of his robbery partners to effect their escape followed as a natural and probable consequence of their joint commission of the robbery. (*People v. George, supra*, 259 Cal.App.2d 424, 429; *People v. Bradford, supra*, 28 Cal.App.3d 695, 706-707.) Appellant's guilt did not hinge upon the subtle distinctions involved in the *Yarber*, case, and no prejudicial error occurred. (*People v. Lopez, supra*, 116 Cal.App.3d 882.)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 30, 1981.