[Crim. No. 21418. First Dist., Div. One. Dec. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ELWOOD LEE PETTY, Defendant and Appellant.

COUNSEL

George H. Main, under appointment by the Court of Appeal, and Wong, Main & Wu for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

GRODIN, J.—Elwood Lee Petty, convicted of burglary and sentenced to prison for the upper term of three years, contends that the trial court erred in denying his request for appointment of new counsel, in admitting evidence of an uncharged prior offense, in failing to instruct the jury as to the requisite intent for aiding and abetting, and in sentencing him to the upper term. We find no reversible error, and affirm.

I. *The trial court did not abuse its discretion in denying appellant's request for appointment of new counsel.*

Appellant was an indigent defendant with court-appointed counsel from the private defender panel. On the morning of trial, shortly before jury selection, and out of the presence of prospective jurors, appellant expressed dissatisfaction with his attorney, whom he felt did not "have enough influence" to represent him, and with whom he had disagreed concerning various trial tactics. The court explored appellant's complaint at length, permitted him to state the reasons for his dissatisfaction, then discussed the situation with defense counsel, and concluded there had been no showing of a breakdown in the attorney-client relationship as would jeopardize appellant's right to effective representation.

The next day, after jury selection had been completed, appellant renewed his complaint. Defense counsel stated: "[W]e have disagreed as to how the matter should proceed, specifically from the point where I believe there will be certain testimony which will be presented by the prosecution ... which could only be rebutted by Mr. Smith. He has been advised of his constitutional right not to testify, and he has ... indicated to me that he will not testify; consequently, I have advised him that this will have a severe effect on his case .... [W]e have reached a point where he has refused to help me in his defense .... My concern is that at this juncture I think I have done what is needed, but ... he is in total disagreement with the way I feel I should approach the case." The court asked appellant, "Do you have a lawyer that you can bring down here to try this case?" Appellant said, "No, I don't have a lawyer at this time." Asked whether he wished to proceed without an attorney, appellant responded, "No, I would like to start proceeding properly, prepare, get me another attorney. As a matter of fact, I think I might have to try to get some money together to pay for me an attorney." The court expressed concern "that what is happening here is nothing more

than a dilatory tactic" and concluded: "Unless I can be shown, unless it can be shown from some competent evidence or statements that the breakdown . . . is such a magnitude as to jeopardize his right to effective assistance of counsel, I can't say from this record that there has been inadequate representation to this point." Appellant submits that the court's failure to appoint new counsel or to permit substitution of privately retained counsel was reversible error. He does not claim he was denied effective assistance of counsel at trial.

It is settled that "[a]n indigent defendant has no absolute right to more than one appointed attorney. The determination whether to substitute appointed counsel rests within the sound discretion of the trial court. [Citation.] An exercise of discretion by a trial court will not be disturbed on appeal, unless it is shown by the defendant that his right to the assistance of counsel was substantially impaired by the continued representation by appointed counsel. [Citation.]" (*People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 859 [149 Cal.Rptr. 47, 2 A.L.R.4th 485]; accord, *People* v. *Walker* (1976) 18 Cal.3d 232, 238 [133 Cal.Rptr. 520, 555 P.2d 306]; *People* v. *Marsden* (1970) 2 Cal.3d 118, 123 [84 Cal.Rptr. 156, 465 P.2d 44]; *People* v. *Maese* (1980) 105 Cal.App.3d 710, 723 [164 Cal.Rptr. 485]; and see *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].) Moreover, "while generally a defendant is entitled to be represented by [privately retained] counsel of his own choosing, the right must be asserted in a timely fashion so that the trial court may, in its discretion and without further inquiry, deny a motion for a continuance to secure new counsel if the motion is made during trial." (*People* v. *Molina* (1977) 74 Cal. App.3d 544, 548 [141 Cal.Rptr. 533].) "In the instant case the defendant did not make a sufficient showing that his right to counsel would be substantially impaired if new counsel were not substituted in." (*People* v. *Terrill* (1979) 98 Cal.App.3d 291, 302 [159 Cal.Rptr. 360].) There was no abuse of discretion under the circumstances.

II. *The trial court did not abuse its discretion in admitting evidence of an uncharged prior offense.*

The burglary for which appellant was convicted occurred on December 18, 1979, at a liquor store in South San Francisco. According to prosecution evidence a man and a woman came into the liquor store and the man, later identified as appellant, purchased a beer and a bag of potato chips. When he paid for the items the cashier-clerk, Ms. Cook, put the money into the cash register but did not close the register

drawer. As she gave appellant his change, "he started asking for cigars," which were located underneath the counter behind the register. Ms. Cook had to turn around and bend over to get them. When she did so, she heard a "click" from the spring clip holding the currency in place in the register. She looked up and saw the woman taking $20 bills out of the till. Ms. Cook told the woman she "wanted the money back" and "didn't want any trouble." As she said this, appellant "started yelling" at her for cigars, and continued to do so until the woman left the store with the money. Ms. Cook called to her boyfriend in the stock room to stop the woman. He followed her out of the store, saw her enter a car, and observed the license number. Meanwhile, appellant walked out of the store, leaving his beer and potato chips on the counter. The car was found to have been registered to appellant.

The evidence of the uncharged prior offense, admitted over appellant's objection, was as follows. About a week earlier, in the second week of December 1979, appellant entered the same liquor store with a man and a woman, and while the other two were "browsing around," appellant asked Ms. Cook "for smaller bottles of liquor," which the store did not carry. According to Ms. Cook, appellant was "persistent"; he "kept asking" about the liquor, and she "kept telling him" they did not have it. During their conversation the other man, who was standing by the cigar case next to the cash register, knocked off a radio and a display bottle which were standing on the counter. Ms. Cook saw his hand "coming through the slot" between the cash register and the cigar case, toward the open cash register drawer. Ms. Cook asked him what he was doing, he said "nothing," then apologized for knocking the items off the counter, and the trio left. After they left, Ms. Cook noticed two bottles of liquor were missing.

■ The Supreme Court has recently restated the principles governing admissibility of an uncharged offense (*People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883]),[1] and on the basis of those principles admission of the evidence complained of was not error. The jury had to determine whether appellant's presence and conduct at the liquor store on December 18, 1979, when his companion stole money from the cash register and escaped in his automobile, was an

---

[1]"[A]dmissibility [of an uncharged offense] depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People* v. *Thompson, supra,* 27 Cal.3d 303, 315.)

innocent coincidence or the product of design. Evidence of appellant's conduct on the prior occasion tended to establish an intermediate fact—a distinctive modus operandi consisting of conduct designed to distract the clerk from the till-tapping activities of his colleagues—·which in turn tended logically and reasonably to establish the material fact in dispute (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315, fn. 14) independently of propensity or disposition (Evid. Code, § 1101, subd. (a)). While the evidence was of necessity prejudicial to defendant, the proximity in time, identity of location, and similarity of conduct make it highly probative. The trial court did not abuse its discretion in determining that the prejudicial effect of the evidence was outweighed by its probative value. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 319; see also *People* v. *Dowdy* (1975) 50 Cal.App.3d 180, 188 [123 Cal.Rptr. 155]; *People* v. *Wills-Watkins* (1979) 99 Cal.App.3d 451 [160 Cal.Rptr. 289]; *People* v. *Rance* (1980) 106 Cal.App.3d 245, 250-251 [164 Cal.Rptr. 822].)

III. *There was no instructional error requiring reversal.*

■ Appellant, relying upon *People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875], contends that the jury was inadequately instructed as to the requisite intent to establish the crime of aiding and abetting a burglary; and (citing *People* v. *Hedrick* (1980) 105 Cal. App.3d 166, 171 [164 Cal.Rptr. 169]) that this alleged inadequacy constitutes prejudicial error per se. We do not agree.

In *People* v. *Yarber, supra,* 90 Cal.App.3d 895, a man was found guilty by jury of 18 counts of oral copulation with a minor, and his wife ·was found guilty of one count, apparently as an aider and abettor. Her conduct, on that occasion, consisted of an act of oral copulation with her husband, which was followed by acts of oral copulation between her husband and two of the minors. The jury was instructed, in accordance with CALJIC No. 3.01, that a person aids and abets the commission of a crime "if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." The court held that the jury should have been instructed that a person aids and abets the commission of a crime "if, with knowledge of the unlawful purpose of the perpetrator, he *intentionally* aids, promotes, encourages or instigates by act or advice the commission of such crime," and that instructing the jury in terms which omitted the intention element was, on the facts of that case, prejudicial error. (90 Cal.App.3d at pp. 916-917.)

The court in *Yarber* reasoned: "Intent is what must be *proved*; from a person's action with knowledge of the purpose of the perpetrator of a crime, his intent to aid the perpetrator can be *inferred*. In the absence of evidence to the contrary, the intent may be regarded as established. But where a contrary inference is reasonable—where there is room for doubt that a person intended to aid a perpetrator—his knowledge of the perpetrator's purpose will not suffice." (*Id.*, at p. 916.) "On the peculiar facts of this case," the court concluded, "it is reasonably probable that the jury found [the wife] guilty because they believed that her act had encouraged [one of the minors] to engage in the sex act with [her husband] and because she had knowledge of [her husband's] purpose, without regard to whether she intended that her act would have such effect. Instructing the jury in terms which omitted the intention element was therefore prejudicial error as to [her]." (*Id.*, at pp. 916-917; fns. omitted.)

We are in accord with the *Yarber* analysis, and in our view a *Yarber* instruction, or something like it,[2] should be given in all aiding and abetting cases. As Judge Learned Hand observed, the traditional definitions of complicity "all demand that [the defendant] in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, 'abet'—carry an implication of purposive attitude towards it." (*United States* v. *Peoni* (2d Cir. 1938) 100 F.2d 401, 402.) A lesser standard, based upon knowledge of the principal's purpose, or of the likelihood that the purpose will be aided by particular acts, may be appropriate in states which distinguish among degrees of complicity (cf. *People* v. *Gordon* (1973) 32 N.Y.2d 62 [343 N.Y.S.2d 103, 295 N.E.2d 777]), but where, as in California, the aider and abettor is guilty of the same crime, and subject to the same punishment, as the principal, the *Yarber* standard appears to be more compatible with legislative intent.

---

[2]Compare *People v. Brown* (1981) 116 Cal.App.3d 820, 826 [172 Cal.Rptr. 221]. We think the word "purpose" provides greater clarity, in this context, than the word "intent," as in the Model Penal Code formulation, cited with approval in *Yarber* (90 Cal.App.3d at p. 916, fn. 10): "with the purpose of promoting or facilitating the commission of the offense." Different views, however, have been expressed, e.g., *People v. Lopez* (1981) 116 Cal.App.3d 882, 888, footnote 1 [172 Cal.Rptr. 374], favoring return to the older CALJIC instruction, which required that the defendant act "knowingly and with criminal intent" (CALJIC No. 3.01 (3d ed. 1970)). The editorial comment to the most recent version of CALJIC No. 3.00 (1981 revision) reflects continuing confusion. (See also *People v. Fagalilo* (1981) 123 Cal.App.3d 524, 533 [176 Cal.Rptr. 698].) At this point, only the Supreme Court is in a position to provide the necessary guidance.

We are not prepared, however, to say that the failure of the trial court to give such an instruction *sua sponte* in this case was reversible error. The jury was instructed that in order to find the defendant guilty as an aider and abettor in the crime of burglary, it would have to find that the defendant knew that his companion intended to commit theft at the moment she entered the liquor store. Once that premise is accepted in the factual context of this case, it would be fanciful to suggest that it was appellant's sudden craving for tobacco which led him to yell persistently for cigars as his companion was fleeing with money from the till. There was no evidence to support such a suggestion, and no such suggestion was made. Appellant's counsel presented no argument to the jury which would have gained support from the instruction which appellant now urges should have been given,[3] and the prosecutor made no argument which would have been weakened by such an instruction.[4] If failure to give a *Yarber* instruction was error, as appellant contends, we are satisfied that the error was harmless under both the California *Watson* standard (*People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]), and the more stringent *Chapman* standard applicable to errors of federal constitutional dimension (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]). (See, to the same effect *People v. Lopez, supra,* 116 Cal.App. 3d at p. 888; *People v. Fagalilo, supra,* 123 Cal.App.3d at p. 533.)

We reject appellant's contention that failure to give such an instruction must be regarded as prejudicial per se. In *People v. Hedrick, supra,* 105 Cal.App.3d 166, upon which appellant's contention rests, the jury was in effect instructed that intent to commit theft of a vehicle by fraud could be conclusively presumed from the fact that the lessee of a rental automobile failed to return it within 30 days of a written demand. Defendant testified he was under the impression that he could keep the car for up to 30 days and be billed for the extra time. The court found that "[t]he instructional error, having removed an element of the crime from consideration by the jury, is reversible per se," but then proceeded to find that the error was prejudicial on the basis of the *Chapman* test as well. (*People v. Hedrick, supra,* 105 Cal.App.3d at p. 172.)

[3]The defense attorney argued, primarily, that the proprietor's identification of appellant was faulty.

[4]The prosecutor argued, consistent with *Yarber, supra,* 90 Cal.App.3d 895, that defendant "began to yell and carry on and create confusion so the woman could make her escape."

Undoubtedly certain instructional error is of such a fundamental nature as to deprive the defendant of a fair trial, and thus to require reversal even where the evidence of guilt is overwhelming. (Cf. *Jackson v. Virginia* (1979) 443 U.S. 307, 320, fn. 14 [61 L.Ed.2d 560, 574, 99 S.Ct. 2781]; *People v. Phillips* (1966) 64 Cal.2d 574, 584-585 [51 Cal.Rptr. 225, 414 P.2d 353]; see also *People v. Burres* (1980) 101 Cal.App.3d 341, 354-355 [161 Cal.Rptr. 593].) We would push abstract logic beyond the requirements of justice and common sense, however, were we to apply that principle to a case such as this, where the state of the law governing the instruction was and remains unsettled, where the gap between the instruction given and the more appropriate instruction is imperceptible in all but a narrow range of cases, and where the more appropriate instruction was neither requested nor indicated by the state of the evidence or argument.

IV. *There was no sentencing error requiring remand.*

The trial court, after denying probation on the basis of appellant's "pattern of regular criminal activity" and "demonstrated professionalism," stated it was imposing the aggravated term for the reasons that "the Defendant has served prior criminal terms; that his prior performance on parole and on probation was totally unsatisfactory; and that the Defendant was, at the time of the instant case, on probation . . . ." ■ Appellant insists that under rule 421(b)(3) of the California Rules of Court a sentence may be aggravated only where the defendant has served prior "prison terms," and that while the probation report indicates that appellant had been convicted of various offenses in other states, there was no showing that those offenses, if committed within California, would have been punishable by imprisonment. This, he contends, is a violation of Penal Code section 668, which provides: "Every person who has been convicted in any other state . . . of an offense for which, if committed within this state, such person could have been punished under the laws of this state by imprisonment in a state prison, is punishable for any subsequent crime committed within this state in the manner prescribed by law and to the same extent as if such prior conviction had taken place in a court of this state."

Rule 421(b)(3) provides that circumstances in aggravation include the fact that "[t]he defendant has served prior prison terms *whether or not charged or chargeable as an enhancement under section 667.5.*" (Italics added.) Arguably, Penal Code section 668 relates only to enhancement, and not to aggravation. Assuming, for purposes of analysis,

that the only prison terms which may be considered under rule 421(b)(3) are those imposed for offenses punishable by imprisonment in California, we find no error. The description of the offenses for which appellant served prison terms in other states appears to qualify under that limitation, and appellant has advanced no evidence or contention to the contrary. Moreover, the court's reference to "criminal terms" is ambiguous, and may well have been intended to refer to numerous convictions reflected in the probation report and cognizable under rule 421(b)(2). Ample grounds for aggravation also existed under rules 421(b)(4) and (b)(5). Our review of the record leaves us with no doubt in this case any error of the sort claimed by appellant was harmless.

The judgment is affirmed.

Elkington, Acting P. J., and Ragan, J.,* concurred.

A petition for a rehearing was denied January 19, 1982.

---

*Assigned by the Chairperson of the Judicial Council.