Filed 10/7/13  In re F.V. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re F.V., <br><br> a Person Coming Under the Juvenile Court Law. | B243302 <br><br> (Los Angeles County <br> Super. Ct. No. PJ45900) |
| THE PEOPLE, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> F.V., <br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert J. Schuit, Judge.  Affirmed.

Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

F.V. appeals from an order finding that he committed second degree robbery (Pen. Code, § 211) and assault by means likely to produce great bodily injury (*id*., § 245, subd. (a)(4))[1] and ordering that he remain a dependent of the juvenile court under Welfare and Institutions Code section 602. The court placed F.V. in the camp-community placement program for six months, with a maximum term of confinement of six years. On appeal, F.V. argues that there is insufficient evidence to support the juvenile court's findings that he committed robbery and assault by means likely to produce great bodily injury. We affirm.

**FACTUAL BACKGROUND**

On the afternoon of June 10, 2012 Justin R. and his younger brother Branden were riding their skateboards at the Ritchie Valens Skate Park in Pacoima. F.V. and a companion approached Justin, and F.V. asked if he could use Justin's cell phone to call a friend. Justin said yes, as long as F.V. used the phone in front of him. Justin handed F.V. the phone. F.V. put it in his pocket and started to walk away, which "was an indication to [Justin] that he was trying to steal it." Justin approached him and said, "Hey, you can call your friend, and I'll forget that you just did that." F.V. held onto the phone.

Justin warned F.V. to return the phone or there would be problems. F.V. approached to within a few inches of Justin and asked what Justin was going to do about it. Justin, who had mixed martial arts training and participated in high school wrestling, punched F.V., who became dazed. F.V. then took a swing at Justin "with a closed fist." Justin, however, was able to avoid F.V.'s punch and hit F.V. a second time, causing F.V. to fall to the ground.

---

[1] The court dismissed the allegations that F.V. used a deadly and dangerous weapon, a pen, in the commission of the offenses (Pen. Code, § 12022, subd. (b)(1)).

F.V.'s friend, who had accompanied F.V. when he first approached Justin, then stepped up to fight Justin. Justin testified that F.V.'s companion "had his fist already ready to come at me. He was physically walking towards me already. And I decided to act in self-defense, and I started hitting him as well." Justin hit this second attacker in the nose. Then, "[o]ut of nowhere," Justin felt a sharp pain in the back of his head. Justin turned to see who had stabbed him and picked that person up. Someone else then pulled Justin's arm back, dislocating his shoulder, and he tried fighting his attackers "with the one fist I had." At some point, he knelt down and several people began hitting him. After about 30 seconds, Justin "picked [him]self up" and asked for a fair fight. His attackers said they were "going to pull a strap" on him. As F.V. and his companions left, they yelled, "Pacas Trece," which Justin understood was Spanish for Pacoima 13, the name of a gang. At that point, they started walking away and were trying to get Justin to their car. Although Justin had not been afraid when he initially attempted to get his phone back, he did have "some level of fear" when they called out "Pacas Trece" and "knew to be careful," because Justin had friends who had been killed by members of the Pacoima 13 gang. Justin never got his phone back.

Branden was some distance away at the time of the incident. He saw someone "rushing to the back of [Justin's] head," and then saw Justin "kneel down and try to get back up." Brenden saw four people around Justin. As the four people were leaving, Branden heard one of them say something like, "Hey, fool, Cowboy, let's go. Let him get to the car so we can pull out a gun." F.V.'s gang moniker is "Cowboy." Branden saw blood on Justin's head and covered the wound with Justin's shirt.

## DISCUSSION

A. *Standard of Review*

"The same standard governs our review of the sufficiency of evidence in juvenile cases as in adult criminal cases: '[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special

3

circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*In re Christopher F.* (2011) 194 Cal.App.4th 462, 471, fn. 6, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *In re Brandon T.* (2011) 191 Cal.App.4th 1491, 1495-1496.)

B.     *There Is Sufficient Evidence of Robbery*

The trial court found beyond a reasonable doubt that F.V. committed robbery. F.V. argues that there is insufficient evidence that he personally used force or fear to take and keep Justin's cell phone, and thus he committed grand theft, not robbery. F.V. asserts that Justin was the only person who testified about the Pacoima 13 comment, which led to his fear, and that there is no evidence that F.V. made the comment regarding Pacoima 13.

Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The crime of robbery includes "'the element of asportation and appropriation of another's property. The escape of the thief with his ill-gotten gains . . . is as important to the execution of the robbery as gaining

4

possession of it.'" (*People v. Gomez* (2008) 43 Cal.4th 249, 256-257; accord, *People v. McKinnon* (2011) 52 Cal.4th 610, 686-687; see *People v. Williams* (2013) 57 Cal.4th 776, 787 ["[b]ecause larceny is a continuing offense, a defendant who uses force or fear in an attempt to escape with property taken by larceny has committed robbery"].)[2] Moreover, "a reasonable assumption is that, if not prevented from doing so, the victim will attempt to reclaim his or her property." (*Gomez*, *supra*, at p. 264). Thus, a robbery is not over until the robber has reached a place of temporary safety. (*People v. Hodges* (2013) 213 Cal.App.4th 531, 540; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1291-1292; *People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1374.) Although robbery is a continuous offense and all the elements must be satisfied before the crime is completed, no "artificial parsing is required as to the precise moment or order in which the elements are satisfied." (*Gomez*, *supra*, at p. 254; *Hodges*, *supra*, at p. 540.)

Thus, the defendant can commit a robbery even if he or she acquired the property peacefully, if the defendant uses force or fear to carry it away. (*People v. Gomez*, *supra*, 43 Cal.4th at p. 257; see *People v. McKinnon*, *supra*, 52 Cal.4th at pp. 686-687.) A mere theft becomes robbery "if [a] perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot." (*Gomez*, *supra*, at p. 257.)

F.V. argues that "it is conceded that [he] himself did not use force or fear." The People made no such concession, however, and there is substantial evidence that the robbery was accomplished by force or fear.

While F.V. may not have initially obtained Justin's phone by force or fear, there is substantial evidence that F.V. retained possession of Justin's phone by fear. It is true that Justin was not afraid when F.V. and his companions attacked him, and even after F.V.'s companions injured Justin, he was still ready to fight them "with the one fist [he] had." Justin did experience fear, however, when they yelled out "Pacas Trece." At this point,

---

**2**     "Asportation" means "carrying away." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041.)

F.V. had not yet completed his escape and carrying away of Justin's cell phone to a place of safety. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1153 ["crime of robbery continues until the robber has reached a place of temporary safety"]; *People v. Flynn* (2000) 77 Cal.App.4th 766, 772 ["robbery remains in progress until the perpetrator has reached a place of temporary safety," and the "scene of the crime is not such a location, at least as long as the victim remains at hand"].) The act of identifying oneself as a member of a gang can satisfy the robbery element of fear. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 178 [victim's understanding that the defendant's statement he was a "homeboy" meant he was a member of a gang was "directly relevant to establishing the element of fear" for robbery].)

The fact that F.V. may not have been the person who yelled "Pacas Trece" does not preclude a finding that he committed the robbery by fear. As discussed in *People v. McCoy* (2001) 25 Cal.4th 1111, "the dividing line between the actual perpetrator and the aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator. . . . The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who was the direct perpetrator or to what extent each played which role." (*Id.* at p. 1120; accord, *People v. Thompson* (2010) 49 Cal.4th 79, 117-118 ["a sharp line does not always exist between the direct perpetrator and the aider and abettor"].) If all of the participants shared the same intent, they may all be "equally guilty." (*People v. Nunez* (2013) 57 Cal.4th 1, 43.)

For example, in *People v. Fagalilo* (1981) 123 Cal.App.3d 524, the defendant entered a store with three codefendants. While the codefendants were talking loudly to distract the cashier, the defendant approached the cashier from behind and, when she opened her cash register, grabbed money from it. The defendant ordered the cashier to remove the drawer from the register, but she pushed him away and he left. When the

6

assistant manager came to assist the cashier, one of the codefendants threw a bottle of wine at him. He ducked and two other people were hit by the bottle and broken glass. (*Id*. at p. 528.) The defendant challenged the sufficiency of the evidence to support his conviction of assault by means of force likely to produce great bodily injury, based on the throwing of the wine bottle. The court concluded the evidence was sufficient to support his conviction, explaining: "The evidence was . . . sufficient to establish [the defendant's] liability as an aider and abetter of [his codefendant's] assault. The defendants entered the store together and escaped together. The jury could reasonably infer that they were jointly engaged in a robbery, the natural and probable consequences of which included resistance by any of the defendants to avoid capture. [Citations.]" (*Id*. at p. 532.)

Here, it is a reasonable inference that F.V., the individual who was with him when he first approached Justin, and the others who attacked Justin were jointly engaged in the robbery. (See *People v. Watkins* (2012) 55 Cal.4th 999, 1019 [in reviewing the sufficiency of the evidence of attempted robbery, "we ask whether 'there is any substantial evidence, including all reasonable inferences to be drawn from the evidence, of the existence of each element of the offense charged'"]; *People v. Aragon* (2012) 207 Cal.App.4th 504, 511 [evidence viewed in light most favorable to judgment must contain "substantial evidence, including reasonable inferences," of guilt].) After F.V. and his original companion were unsuccessful in their attempts to keep Justin from reclaiming his phone, the others quickly intervened and attacked Justin. Then they left together, completing the asportation of Justin's cell phone by calling out the name of the gang and threatening to get a gun. This evidence is sufficient to support a finding that F.V. committed the robbery by means of fear.

C.       *There Is Sufficient Evidence of Assault*

Penal Code section 245, subdivision (a)(4), punishes "[a]ny person who commits assault upon the person of another by any means of force likely to produce great bodily injury." The force required "must be such as would be likely to produce great bodily

7

injury, but it is not required that a defendant intends to inflict such injury." (*People v. Covino* (1980) 100 Cal.App.3d 660, 667.) "While it is true that 'when the evidence shows that a blow has been struck or a physical injury actually inflicted, the nature and extent of the injury is a relevant and often controlling factor in determining whether the force used was of a felonious character' [citations], an injury is not an element of the crime, and the extent of any injury is not determinative." (*Ibid*.) "'"The crime . . . , like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck. [Citation.] The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it."' [Citation.]" (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.) A defendant may commit an assault by means likely to produce great bodily injury by the use of hands or fists alone, or any object used in a manner likely to cause great bodily injury. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028, 1037-1038.)

Here, the individuals who attacked Justin after he had punched F.V. committed an assault by means of force likely to produce great bodily injury. The issue is whether F.V. may be held liable for their actions.[3] F.V. argues that he cannot be held liable for the actions of his companions under an aiding and abetting theory because there was no evidence that he and the others were members of a gang, making the use of force foreseeable. We conclude there is sufficient evidence to support the finding of assault by means likely to produce great bodily injury.

It is a reasonable inference from the evidence presented at trial that F.V., the individual who was with him when he approached Justin, and the others who attacked Justin, were accomplices sharing the same intent—to take Justin's cell phone. Regardless of whether the individuals were all members of a gang, F.V.'s companions stood ready to assist F.V. should he be unable to get away with Justin's cell phone. "'[A]iders and abettors should be responsible for the criminal harms they have naturally, probably and

_____

**3**      While F.V. did take a swing at Justin, there is nothing in the record that supports a finding that the blow was likely to produce great bodily injury had it landed.

foreseeably put in motion.' [Citation.]" (*People v. Prettyman* (1996) 14 Cal.4th 248, 260.) Because the commission of the assault on Justin was a reasonably foreseeable consequence of the robbery (*id.* at pp. 262-263 [assault is a natural and probable consequence of robbery]; *People v. Fagalilo, supra,* 123 Cal.App.3d at p. 532 [same].), F.V. may be liable for the assault under an aiding and abetting theory. (See *People v. Nunez, supra,* 57 Cal.4th at p. 43; *People v. McCoy, supra,* 25 Cal.4th at pp. 1215-1216; *Fagalilo, supra,* at p. 532.) Substantial evidence supports the juvenile court's finding that F.V. committed assault by means likely to produce great bodily injury.

## DISPOSITION

The order is affirmed.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.